229 Cal.App.2d 720 (1964)
Estate of MARIO LANZA, Deceased. J. EVERETT BLUM, Petitioner and Respondent,
v.
BANK OF AMERICA NATIONAL TRUST & SAVINGS ASSOCIATION, Objector and Appellant.
Civ. No. 28200. 
California Court of Appeals. Second Dist., Div. Two. 
Sept. 16, 1964.
 Gerald Lipsky for Objector and Appellant.
 Stanley N. Gleis for Petitioner and Respondent.
 ROTH, J.
 The Bank of America National Trust and Savings Association (Administrator) appeals from an order of the probate department of the Superior Court of Los Angeles County, awarding J. Everett Blum (respondent) $50,000 as extraordinary attorney's fees.
 Lanza died October 7, 1959. Administrator was appointed April 6, 1960.
 On January 30, 1961, Administrator filed a petition and was granted an order authorizing the appointment of respondent as tax counsel for Lanza's estate. The petition set forth:
 "That the decedent, Mario Lanza, during his lifetime, employed J. Everett Blum, as tax counsel; ..." and "That it has been necessary for the Petitioner to seek the advice of said J. Everett Blum, as tax counsel, with regard to various tax matters concerning the estate of decedent; that said tax counsel has negotiated with both State and Federal tax authorities on behalf of your petitioner, ... that it will be necessary for the Petitioner to continue to engage the services of said J. Everett Blum, as tax counsel."
 Services rendered to Lanza by respondent prior to Lanza's death were performed under a written retainer agreement entered into on November 19, 1954. Respondent undertook to render all tax services which Lanza might require, including advice and tax planning with respect to employment contracts, preparation of tax returns, and any litigation required to be initiated or defended by Lanza in connection with tax matters. Respondent's fee for such services was fixed at 2 1/2 per cent of all monies earned by Lanza under any contract of employment or renewals or extensions of such contracts, in existence at the time of the retainer agreement or which were subsequently entered into by Lanza. The agreement was to remain in effect until terminated by either party by 60 days' written notice. Administrator conceded that the agreement was in effect when Lanza died.
 Pursuant to this agreement, respondent, prior to Lanza's death, undertook the negotiation and settlement of asserted *723 tax deficiencies both federal and state, for the years 1955, 1956 and 1957. These negotiations with the Internal Revenue Service began in March 1959, and continued until September 20, 1960, at which time a settlement was reached, resulting in a savings to Lanza's estate of approximately $500,000.
 On October 10, 1962, respondent filed a petition for allowance of fees in the sum of $72,500 [fn. 1] for extraordinary services. The petition listed the services as (1) negotiations and settlement of the above mentioned tax deficiencies; (2) the negotiation and settlement of alleged deficiencies for the years 1958 and 1959; (3) miscellaneous services relating to the tax returns for 1958 and 1959, and to a British claim for income taxes; (4) the preparation and filing of federal estate tax returns for the estate of Lanza and for the estate of his wife; and (5) miscellaneous services in connection with various claims and preparation of inventory, involving approximately 60 hours. Respondent contended in the trial court that the amount of the fee requested was based primarily on results obtained and not upon the time spent.
 Administrator opposed the petition on the ground that respondent's services as tax counsel under the petition of January 30, 1961, did not cover services rendered in settling the deficiencies for the years 1955, 1956, and 1957, in that these services were covered by the retainer agreement. [fn. 2]
 The trial court ruled in favor of respondent. The pertinent findings are:
 "That said Administrator employed said J. Everett Blum to render services as tax counsel with regard to various tax matters concerning the estate of decedent;"
 "The petitioner rendered valuable services to said estate and for said Administrator, all as described in his said petition; ..."
 "That the services found above to have been rendered by petitioner to and for said Administrator were not rendered pursuant to or under said [retainer] agreement dated November 19, 1954; nor was petitioner obligated to render any such services by reason of said agreement;"
 "That petitioner was not estopped from seeking compensation for the services so found to have been rendered ...; *724 "
 "That said Administrator did not engage petitioner as tax counsel to render services solely in respect to the advising and preparation and filing of Federal Estate Tax Returns ...."
 Administrator contends that respondent's services in connection with the settlement of the deficiencies for 1955, 1956 and 1957 were performed and paid for under the retainer agreement of November 19, 1954; and that it did not agree to pay respondent for all of the services for which he was awarded extraordinary fees, although Administrator does not question the rendition of such services.
 [1] As a general rule the authority of an attorney to act for his client normally ends with the client's death. (Judson v. Love, 35 Cal. 463; Deiter v. Kiser, 158 Cal. 259 [110 P. 921]; Estate of Mallory, 99 Cal.App. 96, 104 [278 P. 488]; Loden v. Fish (Tex.Civ.App.) 20 S.W.2d 208, 209; Jones v. Miller, 203 F.2d 131, 134.) An exception to this rule is where the attorney has entered into a special contract of employment, such as a specific contract to conduct a suit to final judgment, or an agreement on a fee for the entire case. (Estate of Mallory, supra.) [2] No evidence, other than respondent's disagreement with Administrator's counsel's interpretation of the agreement was introduced to aid in the interpretation of the agreement. Whether the agreement terminated upon Lanza's death is therefore a matter of law. (Overton v. Vita-Food Corp., 94 Cal.App.2d 367, 370 [210 P.2d 757].)
 [3] As noted above, respondent was to receive 2 1/2 per cent of Lanza's gross earnings under any contract of employment, and any termination was to be made by 60 days' written notice. Respondent testified that "we were to receive our percentages on all income received on contracts which were executed during the term of our employment by Mr. Lanza [under those already entered into]" and "[t]hat was to be paid irrespective of any termination of the [employment] contracts." Respondent urges that the genesis, the consideration and inducement for Blum to enter into said agreement was Lanza's employment and that he had to be alive to be employed. Lanza's death made it impossible for him to enter into further employment, therefore his death terminated the consideration for any further services of respondent. Clearly the retainer agreement is implicit with this contention, since, as respondent testified, contracts entered into subsequent to the agreement produced an income to which the 2 1/2 per cent applied and "[h]e couldn't receive two and a *725 half per cent on anything unless Mr. Lanza performed services and made money." This was personal cooperation on the part of the client of such a nature as to terminate the agreement as a matter of law. (Loden v. Fish (Tex.Civ.App.) 20 S.W.2d 208, 209.)
 Moreover, the scope of the retainer agreement was to provide tax consultation in all matters concerning Lanza and not any specific litigation as in the cases recognizing the exception to the general rule. (Estate of Mallory, supra, 99 Cal.App. 96; In re Agee's Estate, 69 Utah 130 [252 P. 891, 50 A.L.R. 641]; Loden v. Fish, supra, 20 S.W.2d 208.)
 [4] There was substantial evidence to support the finding that Administrator agreed to pay respondent for all services with respect to which he was awarded extraordinary fees.
 The order of the probate court appointing Blum as tax counsel to the estate provided, "It Is Hereby Ordered and Decreed, that the Bank of America National Trust & Savings Association, Administrator of the Estate of Mario Lanza, Deceased, is hereby authorized to employ J. Everett Blum to represent said Administrator as tax counsel and is authorized to pay J. Everett Blum the reasonable value of services rendered ...." The petition, as noted supra, set forth "that said tax counsel has negotiated with both State and Federal tax authorities on behalf of your petitioner, ... that it will be necessary for the Petitioner to continue to engage the services of said ... tax counsel." This alone was sufficient evidence to support the findings of the court. Respondent testified, in addition, that shortly after the appointment of the administrator, powers of attorney were executed to respondent, authorizing him to act on behalf of the Administrator with the Internal Revenue Service. Further, that in the estate tax return filed for the estate he listed his fee at $20,000 but that previous to this, he had told Mr. Gorman, a trust officer for the bank, that he thought his services in regard to the deficiencies were worth $50,000 and that Gorman had said, "we would take it up later."
 On cross-examination, respondent testified that he had talked with Mr. Marston, a trust officer with the bank who was replaced by Gorman, prior to the signing of the power of attorney, and that he would need the power of attorney in order to handle the tax matters for the estate and "he told me to prepare them and send them over."
 "* * * *726 "
 "Q. Was there anything said as to the scope of your duties as tax counsel? A. Just as tax counsel."
 Respondent testified that the next conversation with representatives of the bank was a personal meeting between respondent, Gorman and counsel for Administrator. At that meeting Gorman asked respondent "whether there would be any possibility of [sic] my services would come under the retainer contract that I had with Mr. Lanza, and you [counsel for appellant] replied, 'No, that terminated at Mr. Lanza's death,' and Mr. Gorman said, 'Then we better prepare a petition for Joe's employment as tax counsel.' "
 As to the time spent on the deficiencies between Lanza's death and the appointment of the Administrator, respondent testified that he expected to get paid from Administrator.
 This was more than sufficient evidence to support the finding of the trial court that respondent was entitled to compensation for all items set forth in his petition.
 [5] Administrator also contends that the award is in part based on services that are noncompensable in the instant proceeding but that the trial court drew no distinction between the proper and the improper. The improper inclusions referred to by Administrator are petitioner's request for fees re services performed for the estate of Mrs. Lanza.
 The court found, however, that "petitioner rendered valuable services to said estate and for said Administrator ...." (Italics added.) This finding was sufficient to negate the inference that respondent was being compensated for services to the estate of Mrs. Lanza. This conclusion is reaffirmed by the reduced amount awarded respondent from the amount prayed for in his petition.
 [6] Administrator argues, however, that the court should have specified the amount awarded on each item. No authority for this proposition is cited. In light of the prayer for a reasonable fee for services rendered, we see no error in the court's failure to specify the amount attributable to each valid request.
 [7a] Finally, Administrator contends that the award was so excessive as to amount to an abuse of discretion by the trial court.
 [8] "What constitutes a reasonable fee in a particular case depends on various factors, such as the nature of the litigation; its importance to the parties; its difficulty; the time consumed; the overhead expense of the attorney; the skill required, the skill employed, and the attention given; *727 the attorney's standing in the profession; the success or failure of the attorney's efforts; the contingent character of any compensation due for his services; the fee agreed upon by the parties; and the attorney's age and experience in the type of work for which he claims compensation." (6 Cal.Jur.2d 379; Estate of Duffill, 188 Cal. 536, 548 [206 P. 42].)
 [7b] Two qualified tax attorneys testified that the reasonable value of respondent's services was in excess of $50,000. Respondent testified that he spent 93 1/2 hours on the deficiency settlement after Lanza's death. This, out of a total of 128 hours spent, resulting in a saving to the estate of approximately $500,000.
 [9] An abuse of discretion is shown whenever in the exercise of its discretion a trial court exceeds the bounds of reason. (Berry v. Chaplin, 74 Cal.App.2d 669, 672 [169 P.2d 453].) [7c] It is equally clear that the criteria listed above are merely judicial guidelines to assist the court in determining what constitutes a reasonable fee and are not in and of themselves singularly or in any combination thereof, binding on the court.
 However, in light of the record, Administrator has failed to show an abuse of discretion.
 The order is affirmed.
 Fox, P. J., concurred.
 Herndon, J., did not participate.
NOTES
[fn. 1] 1. $60,000 of this was attributed to the settlement of the deficiencies and $12,500 to all other services. No claim was made from estate of Mrs. Lanza.
[fn. 2] 2. Administrator concedes that respondent is entitled to the requested fee for services rendered in connection with estate and inheritance taxes.