[No. A070219. First Dist., Div. Five. June 4, 1996.]

CITY OF OAKLAND, Plaintiff and Respondent, v.
VERNOLIA McCULLOUGH, Defendant and Appellant.

**COUNSEL**

Robert J. Beles and Paul McCarthy for Defendant and Appellant.

Jayne W. Williams, City Attorney, Joyce M. Hicks, Assistant City Attorney, and Charles E. Vose, Deputy City Attorney, for Plaintiff and Respondent.

**OPINION**

**KING, J.—**

### I. INTRODUCTION

Vernolia McCullough appeals from a postjudgment order awarding attorney fees and costs in the amount of $100,005.48 incurred in a drug house abatement action by the City of Oakland. (Health & Saf. Code, §§ 11570 et seq.) We hold that the statutory authorization for an award "to the prevailing party" in such actions, of "costs, including the costs of investigation and discovery, and reasonable attorneys' fees" (Civ. Code, § 3496), includes the salaries and overhead expenses of government attorneys and law enforcement personnel attributable to the investigation and prosecution of the action.

### II. BACKGROUND

The City of Oakland sued Vernolia McCullough under the drug house abatement law, alleging multiple arrests for drug offenses at her property.[1] The court rendered judgment closing the property for one year and imposing a civil penalty of $1,000. (Health & Saf. Code, § 11581, subd. (b)). In a postjudgment costs order, after receiving supporting declarations and holding an evidentiary hearing, the court approved the city's costs memorandum in the sum of $100,005.48. This appeal is solely from the costs order.

### III. DISCUSSION

#### A. *Overhead Expenses*

The costs award consists mostly of hourly charges for the services of two attorneys and a legal assistant employed by the Oakland City Attorney's office ($36,520.60) and police officers and technicians employed by the Oakland Police Department ($62,735.13). For each employee, these charges include the employee's actual hourly salary plus an hourly overhead component consisting of employee fringe benefits and office operation expenses (e.g., supplies, secretarial support and rent) calculated as a percentage of salary. McCullough contends such overhead expenses are not recoverable,

---

[1]The complaint also named the People as a plaintiff. This was incorrect. The action was prosecuted by the Oakland City Attorney, not the Alameda County District Attorney. Both were statutorily authorized to prosecute the action, but only an action by the district attorney is prosecuted in the name of the People. (Health & Saf. Code, § 11571.) A city attorney's prosecution is in the name of the city.

citing *Wilson* v. *Board of Retirement* (1959) 176 Cal.App.2d 320, 323 [1 Cal.Rptr. 373], for the proposition that only salaries are recoverable. McCullough does not contend the city's overhead amounts are overstated, and she conceded below that the claimed rates for salaries and overhead were reasonable.

In *Wilson*, the prevailing respondent, a county, sought to recover as part of its appellate costs the costs of preparing the respondent's brief and an answer to a petition for a hearing in the Supreme Court, which were prepared by salaried employees in the office of the county counsel. The issue was whether those costs were "actually incurred" as required by rule 26(c) of the California Rules of Court. The court held they were, agreeing with respondent's argument that "The right of these employees to recover that portion of their respective monthly salaries properly allocable to the work they did in mimeographing and segregating these briefs was a reasonable cost then actually incurred and later actually paid by the County." (176 Cal.App.2d at p. 323.)

According to McCullough, *Wilson* establishes that recoverable costs of work performed by government employees include *only* allocable salaries; other expenses, such as overhead, are not recoverable because they are not actually incurred. But *Wilson* held no such thing. The only issue in that case was whether *allocable monthly salaries* were recoverable under California Rules of Court, rule 26(c). The respondent did not seek to recover overhead expenses, and the court did not consider or decide whether such expenses were recoverable. *Wilson* tells us nothing about their recovery.

The governing authority here is not California Rules of Court, rule 26(c), but Civil Code section 3496, which provides that in drug house abatement cases ". . . the court may award costs, including the costs of investigation and discovery, and reasonable attorneys' fees, which are not compensated for pursuant to some other provision of law, to the prevailing party . . . ." The issue is not whether overhead expenses in abatement cases are "actually incurred" within the meaning of rule 26(c)—section 3496 includes no comparable language, and in any event McCullough does not dispute that the city actually incurred the fringe benefit and office operation expenses it claimed. Rather, the issue is whether overhead expenses are included in the "costs of investigation" and "reasonable attorneys' fees" recoverable under section 3496.

The rule in federal civil rights cases is that "reasonable fees" (42 U.S.C. § 1988) "are to be calculated according to the prevailing market rates in the

relevant community, regardless of whether plaintiff is represented by private or nonprofit counsel." (*Blum* v. *Stenson* (1984) 465 U.S. 886, 895 [79 L.Ed.2d 891, 899-900, 104 S.Ct. 1541].) Courts have "convincingly rejected the notion that fee awards under the Fees Act (42 U.S.C. § 1988) or comparable statutes should be reduced or keyed to an attorney's salary when a prevailing party has been represented by a public interest organization." (*Palmigiano* v. *Garrahy* (1st Cir. 1980) 616 F.2d 598, 602.) The same rule applies in California private attorney general litigation: "Services compensable under [Code of Civil Procedure] section 1021.5 are computed from their reasonable market value." (*Serrano* v. *Unruh* (1982) 32 Cal.3d 621, 643 [186 Cal.Rptr. 754, 652 P.2d 985].) The cost of such services—salaries and overhead—bear no relevance to the calculation of the fee recovery. (*Ibid.*)

Those situations, however, are not analogous to drug house abatement cases. Federal civil rights and California private attorney general cases are normally prosecuted by parties represented by private counsel or public interest law firms, not by government entities. In contrast, drug house abatement cases are normally prosecuted by a government entity—the office of a district attorney or city attorney. (Health & Saf. Code, § 11571.)[2] There is no "prevailing market rate" or "reasonable market value" for such prosecutions, for they are not provided in a free market. The cost of such services is the only sensible basis for calculation of a fee recovery.

Should such cost include overhead expenses? We look to the history of Civil Code section 3496. As originally enacted in 1982, the statute provided for recovery of costs and attorney fees in obscenity abatement actions. (Stats. 1982, ch. 1267, § 1, p. 4671.) The statute was rewritten in 1983 to encompass actions to abate the use of houses for gambling, lewdness, assignation or prostitution (Stats. 1983, ch. 1178, § 1, p. 4480), and was amended in 1987 to encompass drug house abatement actions (Stats. 1987, ch. 1076, § 1, pp. 3641-3642). An Assembly Office of Research digest of the 1982 bill described its fiscal effect as "[p]ossible new revenue to local law enforcement agencies that may offset investigation and prosecution expenses." (Assem. Off. of Research, Digest of Sen. Bill No. 1720 (1981-1982 Reg. Sess.) Assem. 3d reading (Aug. 17, 1982).) This indicates legislative intent to offset those expenses.

Overhead is certainly an expense incurred by a government entity investigating and prosecuting a drug house abatement action. Employee fringe benefits and office operating costs must be paid, and to the extent employee

---

[2]Private citizens are also authorized to maintain abatement actions (Health & Saf. Code, § 11571), but government action would seem to be the norm.

time is attributable to an abatement action such costs comprise an expense of the action. Indeed, even where courts have rejected a cost approach to calculating attorney fees in favor of a market value approach, the proposed cost theory included salaries plus overhead (*Serrano* v. *Unruh, supra,* 32 Cal.3d at pp. 640-643; *Shaffer* v. *Superior Court* (1995) 33 Cal.App.4th 993, 1002 [39 Cal.Rptr.2d 506]), and successful cost theories have likewise included overhead (*Page* v. *Preisser* (S.D. Iowa 1979) 468 F.Supp. 399, 402). Most overhead expenses are included in the hourly rates of private counsel, and those that are not are recoverable in fee-shifting cases "if they represent expenses ordinarily billed to a client." (*Bussey* v. *Affleck* (1990) 225 Cal.App.3d 1162, 1166 [275 Cal.Rptr. 646].) More generally, it has been said that "necessary support services for attorneys, e.g., secretarial and paralegal services, are includable within an award of attorney fees" (*Salton Bay Marina, Inc.* v. *Imperial Irrigation Dist.* (1985) 172 Cal.App.3d 914, 951 [218 Cal.Rptr. 839]), and that among the various factors pertinent to determining what consitutes a reasonable attorney fee is "the overhead expense of the attorney" (*Estate of Lanza* (1964) 229 Cal.App.2d 720, 726 [40 Cal.Rptr. 528]). Thus, in a variety of contexts overhead has been regarded as compensable.

We conclude, therefore, that because the Legislature intended section 3496 to offset the expenses of investigating and prosecuting a drug house abatement action, and allocable overhead expenses as well as salaries are properly regarded as expenses of such an action, those expenses as well as salaries are recoverable under Civil Code section 3496. The trial court in the present case properly included overhead expenses in the costs award.

### B. *Investigation Costs*

█ Next, McCullough contends the costs award for the services of police officers and technicians, which the city's costs memorandum designated as "investigative costs" awardable under Civil Code section 3496, improperly included the costs of activities such as making undercover drug purchases and arrests, seizing vehicles, and surveilling drug buyers, which McCullough claims are properly considered "classic law enforcement activities" rather than investigation in connection with a drug house abatement action.

Again, we look to the history of Civil Code section 3496. As originally enacted in 1982 for obscenity abatement actions, the statute provided for an award of costs, including the costs of investigation and reasonable attorney fees, "to the prevailing government agency which brought the action." (Stats. 1982, ch. 1267, § 1, p. 4671.) In its present form, as rewritten in

1983, the statute provides for an award of costs, including the costs of investigation and discovery and reasonable attorney fees, "to the prevailing party." (Civ. Code, § 3496 as amended by Stats. 1983, ch. 1178, § 1, p. 4480.) The distinction is significant. In drug house abatement actions, the "government agency which brought the action" is the office of the district attorney or city attorney, while the "party" in whose name the action is brought is the People or the city. (Health & Saf. Code, § 11571; see fn. 1, *ante.*) The 1982 version of section 3496 narrowly envisioned an award of the government agency's costs—that is, the costs of the district attorney or the city attorney—while the current version more broadly envisions an award of the *party's* costs—that is, the costs of the People or the city. In the present context, this means that under the 1982 version only the city attorney's costs would have been recoverable, but under the current version the *city's* costs are recoverable. The latter costs include the services of police officers and technicians employed by the city's police department, as well as those of the city attorney.

Such recoverable costs include "the costs of investigation" in connection with a drug house abatement action. (Civ. Code, § 3496.) Does this include salaries and overhead for police officers and technicians that are attributable to making undercover drug purchases and arrests, seizing vehicles, and surveilling drug buyers? We think so, as long as there is a sufficient causal connection between such activities and the abatement action. (Cf. *Perkins* v. *Cross* (8th Cir. 1984) 728 F.2d 1099, 1100 [fees held recoverable for prosecution of civil rights actions to the extent that research or investigation "proved directly relevant to the successful prosecution" of those actions].) Such causal connection exists here. The city's goal was to prove that controlled substances were being sold from or stored at McCullough's property, resulting in an enjoinable nuisance. (Health & Saf. Code, § 11570.) The police department established a special unit to gather evidence for this and other drug house abatement actions. What McCullough calls "classic law enforcement activities" were essential to prove drug sales, and thereby make the case for abatement. Undercover drug purchases, supported by surveillance, were the best proof of sales from the property, and a failure to make arrests and seize vehicles would have undermined any confidence in claims of undercover drug purchases. Multiple purchases, arrests and vehicle seizures strengthened the city's case by showing that drug sales were continual rather than occasional. (See *Hellman* v. *La Cumbre Golf & Country Club* (1992) 6 Cal.App.4th 1224, 1230 [8 Cal.Rptr.2d 293] [among circumstances pertinent to question whether act is a nuisance is "whether it is continual or occasional"].)

We conclude the court properly awarded the costs of police services as investigative costs of the abatement action within the meaning of Civil Code section 3496.

However, one police expense of which McCullough complains—four hours that two officers devoted to obtaining quotations for the cost of boarding up McCullough's house—is a cost of *implementing*, not investigating, the abatement action, and for that reason is not recoverable. We shall therefore reduce the costs award by the amount of police officer salaries and overhead attributable to this expense, in the sum of $205.24 (using the officers' hourly overtime rate of $51.31 rather than their normal rate of $45.33, since the record does not indicate the rate at which this time was calculated).[3]

## C. *Reasonableness of Costs*

Finally, McCullough contends some of the costs claimed by the city were unreasonably high or were insufficiently documented: one attorney claimed too much time for reading police reports and preparing for trial, another attorney and the legal assistant did not submit adequate cost breakdowns, the police changed their accounts of who did what work on the case, and some officers spent too much time on surveillance and buying drugs.[4]

An award of attorney fees is committed to the sound discretion of the trial court and will not be disturbed on appeal absent a manifest abuse of discretion. (*Bussey* v. *Affleck, supra,* 225 Cal.App.3d at p. 1165.) "The appellate court should interfere only if it finds that, under all the evidence viewed most favorably in support of the trial court's decision, no judge could reasonably have made the challenged order." (*County of Kern* v. *Ginn* (1983) 146 Cal.App.3d 1107, 1115 [194 Cal.Rptr. 512].)

Here, the evidence supported nearly all of the costs order. The two attorneys submitted declarations in which they documented their time in sufficiently descriptive categories (e.g., meetings, trial preparation, legal research, document review, trial). The police officers and technicians submitted declarations supporting the claims of investigative activities. Whether counsel spent too much time reading police reports, or whether the police spent too much time on surveillance and buying drugs, is at best debatable; such debatability hardly establishes a manifest abuse of discretion.

Under all the evidence viewed most favorably in support of the costs order, we cannot conclude that no judge could reasonably have made the

---

[3]McCullough also complains of nine hours of noninvestigative "public relations" time, but this is nothing more than *her* characterization of unidentified police time. We cannot discern what activities she claims were uncompensable public relations work, and thus cannot determine whether this challenge has any merit.

[4]Some of the police officers' salaries were paid at overtime rates. McCullough does not challenge the inclusion of overtime in the costs award, and the record does not indicate that the overtime cost was unnecessary or unreasonable, which in our view would make it nonrecoverable.

order—with one exception. The sole problem is with the legal assistant, for whom the city claimed 146.5 hours in the total sum of $4,688. In a memorandum filed below, the city said this expense was for the services of a legal assistant employed "to compile and organize documents and exhibits, as well as reviewing police surveillance tapes, which were used in the trial of this case." The city omitted, however, to submit any supporting declaration, as the city had done for the attorneys' time. This expense is completely undocumented. As there is no evidence supporting recovery of this amount, it must be stricken from the costs award.

We shall therefore reduce the $100,005.48 award to $95,112.24 by subtracting the sums of $4,688 for the legal assistant's time and $205.24 for the police officers' time devoted to obtaining quotations for the cost of boarding up the house.

### D. *Appellate Attorney Fees*

The city requests an award of its attorney fees in connection with this appeal. (See *Morcos* v. *Board of Retirement* (1990) 51 Cal.3d 924, 927-929 [275 Cal.Rptr. 187, 800 P.2d 543]; *Evans* v. *Unkow* (1995) 38 Cal.App.4th 1490, 1499-1500 [45 Cal.Rptr.2d 624] [statute authorizing attorney fee award at trial level includes appellate attorney fees unless statute specifically provides otherwise].) An award of attorney fees under Civil Code section 3496 is discretionary, however, and because McCullough has obtained a modification of the costs order (albeit modest), so that she has partially prevailed on appeal, we shall exercise our discretion to order that the parties shall bear their own appellate attorney fees and costs.

### IV. DISPOSITION

The costs order is modified to approve costs of $95,112.24, and is affirmed as modified. The parties shall bear their own attorney fees and costs on appeal.

Peterson, P. J., and Haning, J., concurred.

A petition for a rehearing was denied June 24, 1996, and appellant's petition for review by the Supreme Court was denied August 28, 1996.