Robert L. BALKIND, a/k/a Robert Balkind and Judith A. Balkind, Plaintiffs–Appellants, Counterclaim–Defendants and Cross–Appellees,

v.

TELLURIDE MOUNTAIN TITLE COMPANY and Martin Bregman, Defendants–Appellees,

and

Town of Telluride, Defendant–Appellee and Cross–Appellant.

No. 98CA2182.

Colorado Court of Appeals, Div. IV.

July 6, 2000.

582

Joe Gordon McPhee, Robert Korn, Telluride, Colorado, for Plaintiffs–Appellants, Counterclaim–Defendants, and Cross–Appellees.

Coleman, Jouflas & Williams, Joseph Coleman, Grand Junction, Colorado, for Defendants–Appellees.

Sandra M. Stuller, Telluride, Colorado, for Defendant–Appellee and Cross–Appellant.

Opinion by Judge ROTHENBERG.

This case involves equitable claims between plaintiffs, Robert and Judith Balkind (property owners), and defendant, Town of Telluride (the Town); and legal claims between the property owners and defendants, Telluride Mountain Title Co. (Telluride Mountain); Martin Bregman, the president of Telluride Mountain; and Meredith Muller (seller). The property owners appeal from judgments favoring the Town on the equitable claims and favoring all defendants on the legal claims. The Town cross-appeals the trial court's reduction of its requested attorney fees. We affirm in part, reverse in part, and remand for further proceedings.

The trial court bifurcated the trial and considered the equitable claims first. Following a bench trial on those claims, the trial court entered judgment in favor of the Town. The property owners appeal that judgment, contending that: (1) the judgment is too vague to be enforced; and (2) the trial court erred in denying their post-judgment motion to amend the complaint and join an indispensable party under C.R.C.P. 19.

Following the trial on the equitable claims, the court granted summary judgment on the legal issues in favor of the remaining defendants, dismissing the property owners' remaining claims of fraud, negligent misrepresentation, professional negligence, negligent omission, breach of warranty of title, and breach of contract. The trial court based its ruling on uncontradicted testimony in the trial on the equitable issues. The property owners also appeal this summary judgment.

## I. Background

This case concerns two parcels of property in the Town of Telluride, described as Lot 1 and Tract J, Backman Village Subdivision. Lot 1 has a house on it, and Tract J is reserved for public use under a 1984 agreement between the Town and the original developer of the subdivision (the 1984 Agreement).

The evidence at the trial on the equitable issues showed the following. Seller purchased Lot 1 in 1990 and obtained title to Tract J in 1992 through a quitclaim deed. Seller intended to expand her house onto Tract J, and obtained a letter from Bregman, the president of Telluride Mountain, setting forth the opinion that Tract J was no longer reserved for public use. However, after seller was informed by the Town that no improvements would be allowed on Tract J, she decided to sell both it and Lot 1.

In November 1993, the property owners bought the property for a reduced price reflecting the inability to build on Tract J. At trial, seller testified that, before closing on the property, she informed the property owners that the Town would not allow them to

build any improvements on Tract J. Robert Balkind responded that, "I'm an attorney and I know how to handle the Town."

The evidence further showed that, before closing, the property owners saw Bregman's letter expressing the opinion that Tract J was not reserved for public use because the conditions in the original covenant and the 1984 Agreement had not been fulfilled. According to Robert Balkind, Bregman later confirmed this opinion in person. The property owners also obtained the opinions of several other attorneys who believed that Tract J was no longer reserved for public use. These opinions supported the opinion of the property owners themselves, both of whom are real estate specialists.

Bregman and his company, Telluride Mountain, insured the property owners' title to their new property, but the title policy specifically excepted the covenants and restrictions on Tract J arising out of the subdivision plat and the 1984 Agreement. The warranty of title issued by seller contained an identical exception. Robert Balkind testified at trial that, before closing on the property, he reviewed all of these documents, including the 1984 Agreement, the policy, and the warranty.

After purchasing the property, the property owners obtained a Certificate of Appropriateness from the Town permitting them to build a shed on Lot 1, and another Certificate of Appropriateness permitting them to improve a fence along the property line of Lot 1 and Tract J. The second Certificate required that the fence be located on the property line and not encroach on any public right of way unless the property owners obtained a permit.

In November 1996, the property owners filed this action, seeking a declaration that Tract J was theirs to do with as they wished. However, in the event that Tract J was found to be reserved for public use, they sought damages against Telluride Mountain, Bregman, and seller.

The Town counterclaimed, seeking an order requiring the property owners to remove the shed and fence from public rights of way including Tract J and Colorado Highway 145.

The Town also sought a declaration that it was the owner of Highway 145 and that the property owners were trespassing. Alternatively, the Town sought to enforce its Land Use Code by making the property owners comply with the terms of the Certificates of Appropriateness and limit their improvements to their own property.

After determining as a matter of law that Tract J was still reserved for public use under the terms of the 1984 Agreement, the trial court granted partial summary judgment in favor of the Town. This determination has not been appealed.

At the bench trial on the equitable claims, the property owners also admitted they had not complied with the conditions in the Certificates of Appropriateness and that their improvements encroached on the public rights of way. However, they raised the defenses of equitable and promissory estoppel. The court resolved the credibility issues in favor of seller and against the property owners, finding that equitable estoppel did not apply because the property owners knew about the restrictions on the use of Tract J before they bought the property.

The court similarly rejected the property owners' promissory estoppel argument, and ordered them to remove the fence from Tract J and the fence and shed from the public right of way along Highway 145.

Following the trial, the property owners asked for a stay of the judgment to give them time to locate the boundary line between Highway 145 and Lot 1. The understanding at trial was that the boundary was as set forth in an Improvements Location Certificate admitted into evidence. But, after the trial, the property owners asserted that the boundary line was uncertain and could not be determined by their surveyor.

The trial court granted a stay of thirty days to give the parties an opportunity to reach an agreement, or to give the property owners an opportunity to file a quiet title suit to settle the question. The property owners instead filed a motion to amend the complaint and to join an indispensable party. The motion was based on their belated discovery that San Miguel County, not the

Town, was record owner of the portion of Highway 145 at issue. The property owners claimed the County was an indispensable party and had to be joined to the action under C.R.C.P. 19.

The trial court denied the motion, concluding the issue of the County's ownership had nothing to do with the claims between the property owners and the remaining defendants. Nevertheless, it granted the property owners a 60-day stay in which to resolve the problem or to file a quiet title action. If they failed to do so, the court ordered that the judgment incorporate the boundaries set out in the Improvement Location Certificate admitted into evidence at trial. As of the time the property owners filed this appeal, they had taken no such action.

After the bench trial, the remaining defendants – Telluride Mountain, Bregman, and seller – filed a summary judgment motion. Defendants contended that, based on Robert Balkind's testimony and the trial court's findings of fact in the first trial, the property owners had not justifiably relied on Bregman's letter in purchasing the property and, therefore, could not pursue their claims of fraud and negligent misrepresentation. Also, because the policy issued by Bregman and his company excepted the 1984 Agreement, defendants contended they had no duty to the property owners and were not negligent. For the same reason, defendants contended the breach of warranty of title claim against seller had to be dismissed.

The trial court agreed and granted summary judgment in favor of the defendants on the legal claims. It found that the property owners had abandoned the breach of contract claim.

## II. Indispensable Party

The property owners first contend the trial court erred in denying their motion to amend the complaint and add San Miguel County as an indispensable party. They maintain that, because the County appears to be the record owner of the section of Highway 145 adjacent to their property, the trial court's judgment in the first trial affected the County's property interest, and therefore, the trial court was required to join the County as an indispensable party under C.R.C.P. 19. We disagree.

Whether a person is an indispensable party is a mixed question of fact and law. The necessity of joinder must be determined on the facts of each case, and a trial court's decision under C.R.C.P. 19 will not be reversed absent an abuse of discretion. *Aztec Minerals Corp. v. Romer*, 940 P.2d 1025 (Colo.App.1996).

Under C.R.C.P. 19(b), factors to consider in determining whether a person is indispensable include: (1) the extent to which a judgment rendered in the person's absence might be prejudicial to the person or those already parties; (2) the extent to which prejudice can be lessened or avoided by protective provisions in the judgment, by the shaping of relief, or by other measures; (3) whether a judgment rendered in the person's absence will be adequate; and (4) whether the plaintiff will have an adequate remedy if the action is dismissed for non-joinder. *Aztec Minerals Corp. v. Romer, supra*.

While injury to the absent party is the most important factor in determining indispensability, other factors include the danger of inconsistent decisions, avoidance of multiplicity of suits, and the reluctance of a court to render a decision that will not finally settle the controversy before it. *Dunne v. Shenandoah Homeowners Ass'n*, 12 P.3d 340 (Colo.App.2000).

Here, it is undisputed that the Certificates of Appropriateness, which the property owners applied for and received from the Town, gave them permission to build improvements only on their own property. It also is undisputed that the property owners erected the improvements on property which they did not own, contrary to the requirements of the Certificates.

It is true that the Town's counterclaim sought removal of the property owners' improvements from the highway based on the Town's claim of ownership of the highway. However, the Town alternatively asserted its right to enforce the provisions of its Land Use Code by ensuring compliance with the

Certificates of Appropriateness. The trial court based its judgment on both grounds.

To the extent the judgment requires the property owners simply to erect their improvements on their own property, as required by the Certificates of Appropriateness, it in no way affects the County's interests. To the contrary, it benefits the County by removing a trespass.

The only possible way in which the County could be adversely affected would be by the trial court's limited resolution of the boundary between Lot 1 and Highway 145. But, with respect to that issue, the trial court merely ordered the parties to seek agreement, and in the event they were unable to reach an agreement over the boundary line, ordered them to resort to the Improvement Location Certificate, a document on which the parties relied at trial.

The court also issued two separate orders in favor of the property owners staying execution of the judgment to allow them to file a quiet title action to settle any unresolved boundary issues. The property owners chose not to do so.

Based on these particular circumstances – the property owners having invoked the regulatory power of the Town by applying for and receiving the Certificates; the property owners' admission that their improvements were erected on property which they do not own; their initiation of this declaratory judgment action and failure to pursue a quiet title action, despite repeated opportunities to do so; and the limited nature of the trial court's alternative ruling enforcing compliance with the Certificates — we perceive no abuse of discretion by the trial court in ruling that the property owners had failed to meet their burden of showing the County was an indispensable party in this case.

Contrary to the property owners' contention, we further conclude that the judgment can be tailored to avoid adversely affecting any interest the County may have in Highway 145, and that it is adequate to resolve the issue of their failure to comply with the terms of the Certificates.

■ However, insofar as the judgment also contains language purporting to determine ownership of the highway or to establish a permanent boundary, the trial court is directed to strike such language from the judgment on remand. We agree with the property owners that any such determination must be made in a quiet title action.

### III. Summary Judgment

The property owners next contend the trial court erred in granting summary judgment in favor of defendants on the legal claims based on the trial court's findings of fact in the trial on the equitable issues. We disagree.

■ Summary judgment should be granted only if there is no genuine issue as to any material fact, and the burden so to demonstrate is on the moving party. Appellate review of a summary judgment is *de novo*. *Westerman v. Rogers*, 1 P.3d 228 (1999).

A court must consider the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, in determining whether to grant a motion for summary judgment. *Westerman v. Rogers, supra*. The nonmoving party is entitled to all favorable inferences that may be drawn from the undisputed facts, and all doubts as to whether a triable issue of fact exists must be resolved against the moving party. *Van Alstyne v. Housing Authority*, 985 P.2d 97 (Colo.App.1999).

Once the moving party makes a convincing showing that there are no genuine issues of material fact, the opposing party must demonstrate with relevant and specific facts that a real controversy exists. The opposing party may not rest upon mere allegations or denials in its pleadings, but must provide specific facts demonstrating the existence of a genuine issue for trial. *Westerman v. Rogers, supra*.

Because the property owners admitted to the trial court that they were no longer seeking relief under a breach of contract theory, we need not consider that claim on appeal. We address the remaining claims in turn.

### A. Fraud and Negligent Misrepresentation

■ We reject the property owners' contention that the trial court should not have granted summary judgment on their claims of fraud and negligent misrepresentation because the question of the property owners' reliance on Bregman's letter was a disputed issue of material fact.

■ To establish fraud, the plaintiff must prove that: (1) a fraudulent misrepresentation of material fact was made by the defendant; (2) the plaintiff relied on the misrepresentation; (3) the plaintiff had the right to rely on, or was justified in relying on, the misrepresentation; and (4) the reliance resulted in damages. *M.D.C./Wood, Inc. v. Mortimer*, 866 P.2d 1380 (Colo.1994).

■ Negligent misrepresentation also requires justifiable reliance by the plaintiff. *Jimerson v. First American Title Insurance Co.*, 989 P.2d 258 (Colo.App.1999).

■ If the plaintiff has access to information that was equally available to both parties and would have led to discovery of the true facts, the plaintiff has no right to rely upon the misrepresentation. *M.D.C./Wood, Inc. v. Mortimer, supra.*

Here, uncontradicted testimony at the trial on the equitable issues established that the property owners had access to information setting out the true facts. They had the 1984 Agreement, the original covenants, the title insurance policy, and the warranty of title. They also were informed by the seller that the Town would not allow them to build on Tract J. Based on the property owners' access to this information, the trial court found that they knew about Tract J's restricted use *before* purchasing the property. The evidence further showed that the property owners did not ask the Town about the status of Tract J before purchasing it.

These undisputed facts support the trial court's conclusion that property owners did not have the right to rely on Bregman's representations. Hence, the court did not err in granting summary judgment dismissing the property owners' claims of fraud and negligent misrepresentation. *See M.D.C./Wood, Inc. v. Mortimer, supra* (a defendant may not have the right to rely on a misrepresentation when he or she could have learned the truth by reasonable inquiry).

### B. Breach of Warranty of Title

■ We also reject the property owners' argument that the trial court erred in granting summary judgment and thus dismissing their breach of warranty of title claim against seller.

The title insurance policy and the warranty of title issued by seller to the property owners contained an identical exceptions clause. The clause specifically exempted from coverage:

> Protective Covenants, Conditions and Restriction for Backman Village Subdivision ... as Supplemented by Agreement Designating the Use of Tract J, Backman Village Subdivision, recorded May 31, 1984 ... *the terms of which have not been fulfilled.*

(emphasis added)

According to the property owners, the underlined language repeats the alleged misrepresentation contained in Bregman's letter and justified their belief that Tract J was not restricted to public use. However, we perceive no basis on which property owners may impose a duty based on policy language concerning matters exempted from coverage. *See Arapahoe Land Title v. Contract Financing*, 28 Colo.App. 393, 472 P.2d 754 (1970).

### IV. Attorney Fees

■ In its cross-appeal, the Town contends the trial court erred in reducing the Town's requested attorney fees. We agree.

■ An award of attorney fees must be reasonable. The determination of reasonableness is a question of fact for the trial court, and its ruling will not be disturbed on review unless clearly erroneous. *Tallitsch v. Child Support Services, Inc.*, 926 P.2d 143 (Colo.App.1996).

■ The initial estimate by the court of a reasonable attorney fee is reached by calculation of the "lodestar" amount. This amount represents the number of hours rea-

sonably expended multiplied by a reasonable hourly rate and carries with it a strong presumption of reasonableness. Once the lodestar amount is determined, that basis amount may be adjusted upward or downward. *Tallitsch v. Child Support Services, Inc., supra.*

The existence of a fee arrangement is a factor the court should consider in determining the reasonableness of a requested fee, but an attorney's fee agreement does not of itself require a court to award the amount agreed upon between the attorney and client. *Tallitsch v. Child Support Services, Inc., supra.*

Although the reasonableness of attorney fees is a question of fact for the trial court, we conclude that it is error to reduce an attorney's hourly rate based solely on the attorney's status as a salaried lawyer paid by a nonprofit entity such as the Town. Salaried and public interest attorneys should be awarded attorney fees based on the prevailing market rate rather than a "cost-plus" approach focusing on the attorney's salary. *See California Common Cause v. Duffy,* 200 Cal.App.3d 730, 246 Cal.Rptr. 285 (1987). *See also Oten v. Colorado Board of Social Services,* 738 P.2d 37 (Colo.App.1987)(awarding attorney fees based on market rate to legal services attorneys); *In re Marriage of Swink,* 807 P.2d 1245 (Colo.App.1991)(holding that § 14–10–119, C.R.S.1999, authorizes market rate fees to *pro bono* attorneys who render services in dissolution of marriage actions).

The fact that the attorneys may not personally receive the fees awarded to their employers does not preclude an award based on the prevailing market rate. *See Carter v. Rhode Island,* 25 F.Supp.2d 24 (D.R.I.1998). *Cf. Blum v. Stenson,* 465 U.S. 886, 895, 104 S.Ct. 1541, 1547, 79 L.Ed.2d 891 (1984)(holding that "reasonable fees" in a federal civil rights action are to be calculated according to the prevailing market rates in the relevant community, "regardless of whether plaintiff is represented by private or nonprofit counsel"). *See also Milgard Tempering, Inc. v. Selas Corp.,* 761 F.2d 553 (9th Cir.1985)(modern trend is to award attorney fees for in-house counsel based on the market rate).

*But see Softsolutions, Inc. v. Brigham Young University,* 1 P.3d 1095 (2000)(rejecting the market-rate approach because it would award the salaried attorney's employer a windfall profit; holding that cost-plus rate which included calculation of overhead expenses was the more reasonable measure of attorney fees for in-house counsel).

Salaries paid to government attorneys do not reflect the true cost of the services they render because they do not take into account overhead costs or amounts paid to support staff. *See Carter v. Rhode Island, supra; California Common Cause v. Duffy, supra* (compensation at less than market rate would result in a windfall to the other party); *City of Oakland v. McCullough,* 46 Cal.App.4th 1, 53 Cal.Rptr.2d 531 (1996)(even where courts have rejected a cost approach to calculating attorney fees in favor of a market-rate approach, the proposed cost approach included salaries plus overhead; successful cost theories have likewise included overhead).

The market-rate approach also has the virtue of being predictable for the parties and easy to administer, whereas the cost-plus approach is cumbersome, intrusive, costly to apply, and may distort the incentives for settlement and reward inefficiency. *See PLCM Group, Inc. v. Drexler,* 22 Cal.4th 1084, 997 P.2d 511, 95 Cal.Rptr.2d 198 (2000).

Here, the trial court initially awarded attorney fees by calculating the lodestar amount based on the reasonable hourly rate of attorneys in Telluride. The property owners objected to the amount of the award, complaining that the Town attorney was a salaried employee and did not make the reasonable hourly rate generally earned by private counsel.

The trial court agreed, and without making any additional findings, it simply recalculated the attorney fees based on the Town attorney's salary of $50 per hour. The court did not include the cost of overhead and other expenses.

Because the trial court's sole reason for reducing the Town's attorney fees was its attorney's status as a salaried public employee, we conclude the reduction was error. On remand, the trial court should reconsider at-

torney fees based on the prevailing market rate and such additional factors as the court deems appropriate. *See Tallitsch v. Child Support Services, Inc., supra; PLCM Group, Inc. v. Drexler, supra.* The trial court should also include reasonable attorney fees resulting from this appeal.

The judgments are affirmed in all respects except as to the Town's claim for attorney fees. That portion of the judgment is reversed, and the cause is remanded for further proceedings consistent with the views expressed in this opinion.

Judge MARQUEZ and Judge DAILEY concur.