Tuxford v. Vitts Networks, et al.    CV-01-170-M    11/18/02

UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Jennifer Tuxford,
    Plaintiff

    v.                                          Civil No. 01-170-M
                                                     Opinion No. 2002 DNH 206
Vitts Networks, Inc.,
David Graham, and Greg DeMund,
    Defendants

**SHOW CAUSE ORDER**

In May of 2001, Jennifer Tuxford filed this action against her former employer, Vitts Networks, Inc., claiming that she was subjected to unlawful gender-based discrimination, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. But, she subsequently discovered that Vitts had already filed for bankruptcy protection. Accordingly, by prior order, the court granted her motion to stay proceedings as to Vitts, but observed that because her complaint "was filed in apparent violation of 11 U.S.C. § 162(a)(1), the suit against Defendant Vitts is probably void, or voidable." Tuxford v. Vitts Networks, Inc., No. 01-170-M, slip op. at 1 (D.N.H. May 18, 2001).

Tuxford's amended complaint also advances two state law claims in which she alleges that Vitts and two of its employees, David Graham and Greg DeMund, violated New Hampshire's Law Against Discrimination, N.H. Rev. Stat. Ann. ("RSA") ch. 354-A, and wrongfully invaded her common law privacy rights. Tuxford has, however, withdrawn her common law privacy claims and, as to Defendant Graham, failed to effect timely service of process. Consequently, DeMund is the only defendant properly before the court and the sole remaining claim in the amended complaint is count 2, which alleges that DeMund unlawfully discriminated against Tuxford based upon her pregnancy, in violation of RSA ch. 354-A. DeMund denies any wrongdoing and moves for summary judgment. Tuxford objects.

## Discussion

New Hampshire's Law Against Discrimination provides that it is unlawful for any employer to discriminate on the basis of sex. RSA 354-A:7, I. It also provides that, "[f]or purposes of this chapter, the word 'sex' includes pregnancy and medical conditions which result from pregnancy." RSA 354-A:7, VI(a). Thus, it is plain that an employee, like Tuxford, may bring suit against her

employer if she is the victim of pregnancy-related discrimination. What is unclear, however, is whether an employee may sue a co-worker or supervisor for such discrimination.

In support of her view that RSA ch. 354-A does provide for individual liability on the part of co-workers and supervisors, Tuxford points to that section of the statute defining "unlawful discriminatory practice." It provides, among other things, that an unlawful discriminatory practice includes: "aiding, abetting, inciting, compelling or coercing another . . . to commit an unlawful discriminatory practice." RSA 354-A:2, XV(d). And, later in the statute, it provides that, "[a]ny party alleging to be aggrieved by any practice made unlawful under this chapter may . . . bring a civil action for damages or injunctive relief or both." RSA 354-A:21-a, I (emphasis supplied). Accordingly, Tuxford says she has a viable claim against DeMund for having aided and abetted Vitts' (i.e., her employer's) unlawful conduct.[1]

_____

[1] It is, perhaps, important to point out that the section of RSA ch. 354-A pertaining to employment discrimination makes it unlawful for employers to engage in unlawful discrimination; it does not specifically provide for liability on the part of co-workers or supervisors who engage in discriminatory conduct. Consequently, to be liable as an aider and abettor of an unlawful

3

The New Hampshire Supreme Court has yet to consider whether, and, if so, under what circumstances, RSA ch. 354-A provides a civil cause of action against co-workers and/or supervisors for alleged acts of unlawful discrimination. Plaintiff, understandably, urges the court to hold that the statute does recognize such a cause of action against supervisors and co-workers who "aid and abet" the employer's unlawful discriminatory practices.

Defendant, on the other hand, says that because plaintiff has failed to point to admissible evidence sufficient to establish a prima facie claim that he engaged in any "unlawful discriminatory practice," the court need not address that unresolved question of statutory interpretation. That is to say, even assuming the statute does admit of personal liability under some circumstances, DeMund asserts that this is not such a case. Importantly, however, DeMund focuses his argument on the claim

discriminatory practice in the labor context, an individual or entity must aid and abet an "employer," not merely a supervisor or co-worker who might have engaged in unlawful or inappropriate conduct. And, an "employer" for purposes of the statute is not any person or entity that employs another, but only those persons or entities that employ more than 5 people. See RSA 354-A:2, VII.

4

that there is insufficient evidence to show that he, personally, discriminated against Tuxford. In so doing, he avoids the more pertinent issue: whether there is sufficient evidence to show that he "aided and abetted" <u>Vitts'</u> discriminatory conduct toward Tuxford (a point perhaps established by a lesser measure of evidence).

Unfortunately, neither party has addressed what appear to be critical and dispositive issues, including:

1. Whether Tuxford can maintain an action under RSA ch. 354-A against DeMund absent record evidence that she named him as a respondent in her EEOC charge; and

2. Whether, since corporations can only act through agents and employees, a corporate officer or employee is capable of "aiding and abetting" his or her employer's commission of an unlawful discriminatory practice.

I. <u>Failure to Name DeMund as a Respondent in the Administrative Charge of Discrimination.</u>

New Hampshire's Law Against Discrimination provides that any person "claiming to be aggrieved by an unlawful discriminatory practice may make, sign and file with the commission a verified complaint in writing which <u>shall state the name and address of the person</u> . . . alleged to have committed the unlawful

5

discriminatory practice."  RSA 354-A:21, I(a) (emphasis

supplied).  Later, the statute provides that the "commission may

. . . order compensatory damages to be paid to the complainant by

the <u>respondent</u> . . .."  RSA 354-A:21, II(d) (emphasis supplied).

Finally, the statute authorizes a complainant, after filing a

charge of discrimination with the commission, to remove his or

her claims to the state superior court.  RSA 354-A:21-a, I.

Importantly, that portion of the statute provides that the court

may award damages to the complainant "to the same extent as

damages and injunctive relief could be awarded by the commission

in a complaint not removed."  <u>Id.</u>  Plainly, however, if the

complainant's co-worker or supervisor is not named in the

original administrative charge of discrimination (i.e., is not a

"respondent"), the commission cannot award damages or order

injunctive relief against that party.  Consequently, such damages

would seem to be unavailable in a judicial forum as well.

In short, it would appear that New Hampshire's statutory

scheme, like those adopted by other states, and like its federal

counterpart - Title VII, requires a complainant to name all

potentially liable parties in his or her original administrative

6

charge of discrimination. Failure to do so likely precludes the complainant from seeking damages against such individuals in a subsequent civil lawsuit. See, e.g., McKinnon v. Kwong Wah Restaurant, 83 F.3d 498, 504 (1st Cir. 1996) ("[A] plaintiff generally may not maintain a suit [under Title VII] against a defendant in federal court if that defendant was not named in the administrative proceedings and offered an opportunity for conciliation or voluntary compliance."); Hayes v. Henri Bendel, Inc., 945 F. Supp. 374, 378-79 (D. Mass. 1996) (dismissing plaintiff's complaint under the Massachusetts law against discrimination because she failed to name individual defendant in her administrative charge of discrimination).[2]

Of course, it is unclear whether a complainant's failure to name an individual defendant in his or her administrative complaint is a jurisdictional bar to any subsequent civil action, or whether it merely gives rise to an affirmative defense,

_____

[2]    Although DeMund does not press this issue in his motion for summary judgment, he did address it in his motion to dismiss (document no. 12), which, for procedural reasons, the court did not address on the merits. There, he asserted that the timely filing of an administrative charge of discrimination (i.e., the "timeliness requirement"), specifically naming the individuals charged (i.e., the "charging requirement"), is a jurisdictional prerequisite to the subsequent filing of a civil action.

7

subject to waiver.  The New Hampshire Supreme Court has yet to address the issue.  It is entirely possible that the state supreme court might conclude that naming an individual defendant in the administrative charge is a jurisdictional prerequisite to the pursuit of a subsequent civil action against that individual under RSA ch. 354-A.  It is, however, also possible that the court might conclude that the failure to comply with the "charging requirement" gives rise to an affirmative defense, subject to waiver or estoppel if not raised in the defendant's answer.  See McKinnon, 83 F.3d at 505 (holding that Title VII's "charging requirement is nonjurisdictional.").  See generally Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1982) (holding that the "timeliness requirement" is not jurisdictional because the "provision granting district courts jurisdiction under Title VII . . . does not limit jurisdiction to those cases in which there has been a timely filing with the EEOC.").

Applying the reasoning of Zipes to New Hampshire's Law Against Discrimination suggests that the timely filing of an administrative charge, which names the potentially liable party, is a jurisdictional prerequisite to pursing a subsequent civil

8

action.  See RSA 354-A:21, I(a) (charging requirement); RSA 354-A:21, III (timeliness requirement); and RSA 354-A:21-a, I (vesting the state superior court with jurisdiction over civil suits, provided the claimant has, among other things, complied with the statute's administrative charging and timeliness requirements).  Nevertheless, in the interests of fairness, the parties should be afforded the opportunity to research and brief this issue before the court resolves it.

B.    "Aiding and Abetting" Liability.

Because corporations can only act through their agents and employees, it is difficult to understand how an agent or employee can "aid and abet" the employer's allegedly wrongful conduct. For example, if the president of a corporation were accused of wrongfully discharging a female employee based solely upon her gender, his employer might be held liable for that unlawful conduct.  It would, however, be unusual to say that by unlawfully discharging the employee, the president "aided and abetted" the corporate employer's wrongful conduct.  It is more commonly understood that the employer is liable for that conduct because

it was undertaken by one of its employees while acting within the scope of his or her employment.

Judicial opinions discussing whether a corporate agent or employee can "aid and abet" his or her employer are, at least in the civil context, decidedly divergent. Courts construing the Massachusetts law against discrimination have, for the most part, concluded that individual co-workers and supervisors can be held personally liable for having "aided and abetted" discriminatory conduct undertaken by their corporate employer. See, e.g., Chapin v. Univ. of Mass., 977 F. Supp. 72, 78 (D. Mass. 1997) ("Chapter 151B § 4(5) makes it unlawful 'for any person, whether an employer or an employee or not, to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this chapter or to attempt to do so.' Thus, individuals, including co-employees of the allegedly aggrieved employee, are liable for violations of [the Massachusetts law against discrimination].").

Other courts, interpreting similar state statutes, have reached the opposite conclusion. So, for example, courts in California have concluded that a state law against discrimination

10

does not provide for liability on the part of individual co-workers or supervisors who are accused of having aided and abetted an employer's discrimination.

> A corporation can act only through its individual employees. . . . A corporate employee cannot conspire with his or her corporate employer; that would be tantamount to a person conspiring with himself. Thus when a corporate employee acts in his or her authorized capacity on behalf of his or her corporate employer, there can be no claim of conspiracy between the corporate employer and the corporate employee. In such a circumstance, the element of concert is missing.
>
> Similar reasoning applies to aiding and abetting. Linguistically, it is questionable whether it can properly be said that an employee who exercises delegated personnel management authority is 'aiding and abetting' his or her employer in managing personnel, and the stilted and unusual nature of such a usage alone casts doubt on plaintiffs' construction. Had the Legislature intended to place all employees charged with the duty of making personnel decisions in California at risk of personal liability, we believe the Legislature would have done so by language more direct and less susceptible to doubt. Moreover, since a corporation can act only through its employees, the element of concert is missing in the 'aiding and abetting' context just as in the conspiracy context.

Janken v. GM Hughes Electronics, 46 Cal. App. 4th 55, 77-78 (Cal. Ct. App. 1996) (citations omitted). See also Reno v. Baird, 957 P.2d 1333, 1347 (Cal. 1998) (upholding the Janken court's holding and concluding that "individuals who do not themselves qualify as

11

employers may not be sued under the [California statute] for alleged discriminatory acts.").

The more persuasive analysis appears to be that of the California state courts.  Lending weight to that view, at least in the context of this case, is the fact that the New Hampshire Legislature obviously intended to shield small employers from liability under the Law Against Discrimination.  See RSA 354-A:2, VII (excluding from the definition of "employer" those individuals and entities that employ fewer than 6 people).  If the Legislature intended to shield small employers from discrimination claims, it reasonably follows that it also intended to shield individuals from such claims.  See, e.g., Reno, 957 P.2d at 1340 ("The Legislature clearly intended to protect employers of less than five from the burdens of litigating discrimination claims.  We agree that it is 'inconceivable' that the Legislature simultaneously intended to subject individual nonemployers to the burdens of litigating such claims.").[3]

---

[3]    The California Supreme Court has made plain the statutory distinction between claims asserting unlawful "discrimination" - as to which it held there is no individual liability - and those asserting unlawful "harassment."  See Reno,

12

So, based upon the language of RSA ch. 354-A, it is debatable whether "aiding and abetting" liability may properly attach to an employee of a corporate employer alleged to have engaged in unlawful discrimination, or whether such liability is limited exclusively to third parties that are not employed by the corporation. See, e.g., Pittsburgh Press Co. v. Pittsburgh Com. on Human Relations, 413 U.S. 376 (1973) (holding that publisher could be liable for "aiding" an unlawful employment practice by publishing an employer's advertisements that sought job applications by reference to gender); Colorado Civil Rights Com. v. Travelers Ins. Co., 759 P.2d 1358 (Colo. 1988) (holding that insurance company aided and abetted a discriminatory practice by offering and underwriting employer's group medical insurance policy that discriminated against women).

---

957 P.2d at 657-58. The court noted that while "[s]ome of the [statute's] provisions, such as those involving harassment, do, indeed, apply to individual persons as well as employers," the "discrimination provisions, however, apply only to employers." Id. at 659-60 (emphasis in original). In this case, Tuxford advances a claim of unlawful discrimination, not harassment, and, perhaps more importantly, New Hampshire's Law Against Discrimination does not appear to make any such distinction between the scope of liability for unlawful harassment and unlawful discrimination.

13

Again, the parties should be afforded the opportunity to brief the issue before the court determines whether DeMund, as the former president and chief operating officer of Vitts, was legally capable of "aiding and abetting" Vitts' (alleged) discrimination against Tuxford, as that phrase is used in RSA ch. 354-A.

## Conclusion

Accordingly, on or before **December 6, 2002,** plaintiff shall show cause why her RSA ch. 354-A claim against defendant Greg DeMund should not be dismissed for:

1.    Failure to identify DeMund as a respondent in her administrative charge of discrimination; and

2.    DeMund's inability, as the president and chief operating officer of Vitts, to "aid or abet" Vitts' alleged commission of an unlawful discriminatory practice.

If defendant wishes to file a response, he shall do so on or before **December 20, 2002.**

14

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

November 18, 2002

cc:  Leslie H. Johnson, Esq.
     Steven E. Grill, Esq.