Katherine ALLEN and Katherine Allen, P.C., Petitioners

v.

Jack STEELE and Danette Steele, Respondents.

No. 09SC263.

May 9, 2011.

---

478

Kennedy Childs & Fogg, P.C., John R. Mann, Daniel R. McCune, Miles L. Buckingham, Denver, Colorado, Attorneys for Petitioners.

Paul Gordon, LLC, Paul Gordon, Denver, Colorado, Attorneys for Respondents.

McConnell Fleischner Houghtaling & Craigmile, LLC, Troy R. Rackham, Denver, Colorado, Attorneys for Amicus Curiae Colorado Defense Lawyers Association.

Jones & Keller, P.C., Ross W. Pulkrabek, Daniel A. Wartell, Denver, Colorado, Attorneys for Amicus Curiae Colorado Trial Lawyers Association.

Chief Justice BENDER delivered the Opinion of the Court.

## I. Introduction

In this appeal we review the court of appeals' decision that plaintiffs Jack and Danette Steele stated a claim for negligent misrepresentation against an attorney with whom they did not have an attorney-client relationship. *Steele v. Allen*, 226 P.3d 1120, 1124 (Colo.App.2009). The Steeles allege that attorney Katherine Allen provided them incorrect information about a statute of limitations, which led to their missing the filing deadline in a negligence suit. The trial court dismissed both their claims of negligent misrepresentation and professional negligence, or what is commonly referred to as legal malpractice. The Steeles appealed only the dismissal of their negligent misrepresentation claim.

The court of appeals held that the Steeles stated a claim of negligent misrepresentation for which relief can be granted. *Id.* The court reasoned that although Allen did not issue an opinion letter to the Steeles at the request of a client, the Steeles nonetheless pleaded sufficient facts to satisfy all the elements of negligent misrepresentation. *Id.* at 1123. The court of appeals also supported its holding by reference to section 15(1)(c) of the Restatement (Third) of The Law Governing Lawyers (2000), which requires attorneys to exercise reasonable care when providing legal services to prospective clients. *Id.*

We reverse. Negligent misrepresentation requires, in part, that the misrepresentation be "for the guidance of others in their business transactions." We hold as a matter of law that an initial consultation to discuss a potential civil lawsuit is not sufficient to meet the element "guidance of others in their business transactions"; therefore, the Steeles did not plead sufficient facts to state a claim of negligent misrepresentation.

Next, we address the court of appeals' reliance on section 15(1)(c) of the Third Restatement, which imposes liability for legal malpractice in the absence of an attorney-client relationship. We hold that a claim of negligent misrepresentation may not be founded upon the requirement in section 15(1)(c) of the Third Restatement that attorneys owe a duty of reasonable care to prospective clients.

Accordingly, we reverse the court of appeals' decision that the Steeles stated a claim of negligent misrepresentation for which relief can be granted. We remand this case to the court of appeals so that it may be returned to the trial court for proceedings consistent with this opinion.

## II. Facts and Proceedings Below

Jack Steele was injured in an automobile accident, and he and his wife purportedly met with attorney Katherine Allen to discuss filing a negligence suit against the other driver. The Steeles claim that Allen provided them with incorrect information regarding a statute of limitations, which caused them to miss a filing deadline. They sued Allen and her professional corporation, Katherine Allen, P.C., based upon two claims: (1) legal malpractice, and (2) negligent misrepresentation.

The Steeles' complaint alleges that Allen told them that their negligence claims against the other driver were subject to a five-year statute of limitations and that they needed to settle any workers' compensation claims prior to filing suit. Their complaint asserts that both statements were false and that a three-year statute of limitations ultimately time-barred their action against the other driver.

The complaint does not allege that the Steeles formed an attorney-client relationship with Allen. Likewise, the complaint does not set forth the circumstances in which the Steeles met with or discussed their case with Allen—except for the statement that Allen "gave such information to Plaintiffs in the course of Defendants' business, profession, and employment." The Steeles asked for damages "in the value of their claims against [the other driver] and any other person legally liable for damages arising from the . . . motor vehicle collision."

Allen moved to dismiss the complaint under C.R.C.P. 12(b)(5) for failure to state a claim upon which relief can be granted. The district court granted the motion and dismissed the complaint with prejudice. It dismissed the legal malpractice claim because the Steeles did not allege sufficient facts to support a finding either that Allen owed them a duty of care or that they had established an attorney-client relationship. It dismissed their negligent misrepresentation claim because the Steeles did not allege the "special circumstances" that were present in *Mehaffy, Rider, Windholz & Wilson v. Central Bank Denver*, 892 P.2d 230 (Colo.1995), in which attorneys prepared opinion letters to induce a third party's participation in a business transaction, at the direction of and for the benefit of the attorneys' client.

The Steeles appealed only the dismissal of their negligent misrepresentation claim to the court of appeals. The court of appeals reversed. *Steele*, 226 P.3d at 1124. It stated that it could not conclude that the Steeles would be unable to prove any set of facts that would entitle them to relief under a negligent misrepresentation theory. *Id.*

The court of appeals cited *Mehaffy* for the proposition that attorneys may be liable to non-clients for negligent misrepresentation where they give false information to third parties in the context of a business transac-

tion. *Id.* at 1123. The court of appeals reasoned that although *Mehaffy* involved the scenario in which attorneys issued opinion letters to a non-client at their client's request, the *Mehaffy* court "did not specifically limit the tort of negligent misrepresentation in the attorney-client context to that circumstance." *Id.*

The court of appeals relied upon, as persuasive authority, the Restatement (Third) of The Law Governing Lawyers, which directs lawyers to "use reasonable care to the extent the lawyer provides . . . legal services" to a prospective client. *Id.* (quoting Restatement (Third) of The Law Governing Lawyers § 15(1)(c) (2000)). The court of appeals noted that the Restatement is different from Rule 1.18 of the Colorado Rules of Professional Conduct, but reasoned that section 15(1)(c) is not "precluded by, or contrary to" *Mehaffy* and may be applicable in this case.[1] *Id.* at 1123–24.

The court of appeals held that to state a claim, the misrepresentation must be given in the context of a business transaction. *Id.* at 1124. It reasoned that this element might be satisfied if an attorney provides false information to a potential client during an initial consultation for legal representation, but most likely would not be satisfied if an attorney makes informal or casual statements in a social setting. *Id.* (citing Restatement (Second) of Torts § 552 cmt. d (1977)). Therefore, although the Steeles did not allege in their complaint the specific circumstances of their meeting with Allen, they might be able to prove such a set of facts which would entitle them to relief. *Id.*

We granted Allen's petition for certiorari to determine whether the court of appeals erred in holding that the Steeles stated a claim of negligent misrepresentation for which relief can be granted.[2] We now reverse.

---

1. Colo. RPC 1.18 requires attorneys to keep prospective clients' information confidential and avoid conflicts of interest with prospective clients.

2. We granted certiorari on the follow two issues:
 1. Whether the court of appeals erred in imposing liability on attorneys to non-clients for negligent misrepresentation in light of *Mehaffy,*

*Rider, Windholz & Wilson v. Cent. Bank Denver,* 892 P.2d 230 (Colo.1995).
 2. Whether the court of appeals erred in relying on Restatement (Third) of the Law Governing Lawyers section 15 (2000) as a basis for establishing a duty of care on a lawyer to a non-client.

### III. Standard of Review

■ A C.R.C.P. 12(b)(5) motion to dismiss for failure to state a claim upon which relief can be granted tests the formal sufficiency of a plaintiff's complaint. *Pub. Serv. Co. of Colo. v. Van Wyk*, 27 P.3d 377, 385 (Colo.2001). C.R.C.P. 12(b)(5) motions to dismiss are looked upon with disfavor, and a complaint should not be dismissed unless it appears beyond a doubt that a plaintiff can prove "*no* set of facts in support of her claim which would entitle her to relief." *Id.* at 385–86. When reviewing a motion to dismiss under C.R.C.P. 12(b)(5), a court must accept all averments of material fact as true and view all allegations in the light most favorable to the plaintiff. *Id.* at 386. A court may not consider information outside the confines of the pleading. *Id.*

■ We review motions to dismiss de novo. *BRW, Inc. v. Dufficy & Sons, Inc.*, 99 P.3d 66, 71 (Colo.2004). What elements constitute a claim are questions of law that we review de novo. *Matoush v. Lovingood*, 177 P.3d 1262, 1269 (Colo.2008).

### IV. Discussion

In this case, we decide the narrow issue of whether a non-client may state a claim of negligent misrepresentation against an attorney for providing allegedly incorrect information during a consultation about a potential civil lawsuit. We do not decide whether a non-client may state a claim of legal malpractice against an attorney because the Steeles did not appeal that issue and that issue was not before the court of appeals.

The Steeles argue that their complaint was sufficient to state a claim of negligent misrepresentation because a jury could reasonably conclude that Allen negligently gave false information to the Steeles for their benefit and Allen should have foreseen that the Steeles would reasonably rely on the information. Additionally, the Steeles and their amici argue that attorneys owe a duty to exercise reasonable care and to refrain from giving false information to prospective clients. As support for this duty of care to prospective clients, they cite to section 15(1)(c) of the Restatement (Third) of The Law Governing Lawyers and a number of cases from other states that have adopted a balancing test to determine whether an attorney may be liable to non-clients for legal malpractice.[3] Neither the Steeles nor their amici cite to any jurisdiction that has adopted section 15(1)(c) of the Third Restatement.

Allen makes two main arguments. First, Allen asserts that the court of appeals erred by expanding the tort of negligent misrepresentation beyond the limited facts that were present in *Mehaffy*. Allen maintains that a claim of negligent misrepresentation is proper only where an attorney issues an opinion letter to induce a third party's participation in a business transaction at the direction, and for the benefit, of the attorney's client. Second, Allen asserts that the court of appeals erred by adopting section 15(1)(c) of the Restatement (Third) of The Law Governing Lawyers, which is a legal malpractice standard of care, because the Steeles did not appeal the trial court's dismissal of their legal malpractice claim.

Initially, we discuss the elements of negligent misrepresentation and our cases construing this tort. Then, we review the specific element of "guidance of others in their business transactions" to determine whether an initial consultation about a potential lawsuit can satisfy that element. Finally, we address section 15(1)(c) of the Third Restatement of The Law Governing Lawyers because the court of appeals supported its hold-

---

**3.** The Steeles and their amici claim that because this case was dismissed on a 12(b)(5) motion, this court may decide whether there is *any* legal theory that entitles the Steeles to relief based upon the facts alleged in their complaint; review is not limited to the issue of negligent misrepresentation. In other words, they argue that this court can determine that the Steeles stated a claim for either negligent misrepresentation or any other cause of action—such as malpractice. Contrary to what the Steeles argue, we may not consider whether they stated a claim for relief under any legal theory. We may only consider whether the Steeles pleaded sufficient facts to state a claim of negligent misrepresentation because that is all the Steeles appealed and it is the only claim properly before us. *People v. Salazar*, 964 P.2d 502, 507 (Colo.1998) ("It is axiomatic that issues not raised in or decided by a lower court will not be addressed for the first time on appeal.").

ing with reference to this section, and we consider whether it can form the basis of a claim of negligent misrepresentation.

## A. Negligent Misrepresentation

In Colorado, attorneys "do not owe a duty of reasonable care to non-clients," including prospective clients.[4] *Mehaffy*, 892 P.2d at 240. An attorney may be liable for legal malpractice only if the plaintiff has proven the existence of an attorney-client relationship. *Id.* at 239. Consistent with this principle are the Colorado Rules of Professional Conduct, which state that the only ethical duties attorneys owe to prospective clients are to keep their information confidential and to avoid conflicts of interest.[5] Colo. RPC 1.18.

Where non-clients are concerned, an attorney's liability is generally limited to a narrow set of circumstances in which the attorney has committed fraud or a malicious or tortious act, including negligent misrepresentation. *Mehaffy*, 892 P.2d at 235; 1 Ronald E. Mallen & Jeffrey M. Smith, *Legal Malpractice* § 6:1 at 552 (2011). Absent this limitation, lawyers would be potentially liable to an "unforeseeable and unlimited number of third parties." *Mehaffy*, 892 P.2d at 235. Attorneys' liability to non-clients is also limited due to the adversarial nature of litigation, in which "injury to a third person often is the direct, intended objective of the attorney's representation." Ronald & Mallen, *Legal Malpractice* § 7:1 at 768; *accord Mehaffy*, 892 P.2d at 235; *Turman v. Castle Law Firm, LLC*, 129 P.3d 1103, 1105 (Colo.App. 2006).

An attorney may be liable to a non-client for negligent misrepresentation, which is defined according to section 552 of the Restatement (Second) of Torts (1977).[6] *Mehaffy*, 892 P.2d at 236–39. The elements of a claim of negligent misrepresentation are: (1) one in the course of his or her business, profession or employment; (2) makes a misrepresentation of a material fact, without reasonable care; (3) for the guidance of others in their business transactions; (4) with knowledge that his or her representations will be relied upon by the injured party; and (5) the injured party justifiably relied on the misrepresentation to his or her detriment. *Id.* at 236–38.

Section 552 of the Restatement does not require that the defendant attorney make the misrepresentation by issuing an opinion letter to a non-client on behalf of an existing client; however, the attorney's duty to the non-client often flows from her duty to an existing client. Ronald & Mallen, *Legal Malpractice* § 7:14 at 863 ("The nonclient's entitlement ... often arises from a duty owed the client."). Case law from across jurisdictions indicates that the most common form of negligent misrepresentation against an attorney arises when an attorney provides a written opinion to a third party at the request of the attorney's client, in order to close a "variety of commercial transactions." *Id.* at 864.

These circumstances were present in *Mehaffy*, where we held that a non-client stated a claim against a law firm and a number of attorneys for negligent misrepresentation. 892 P.2d at 233. There, the defendant attor-

---

4. A prospective client is a "person who discusses with a lawyer the possibility of forming a client-lawyer relationship." Colo. RPC 1.18.

5. The Colorado Rules of Professional Conduct define proper attorney conduct for purposes of professional discipline; they are not meant as a basis for civil liability. Colo. RPC, Preamble and Scope §§ 14, 20.

6. Section 552 provides in relevant part:
(1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to

them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.
(2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered
(a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and
(b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

neys prepared a series of opinion letters stating that a pending lawsuit had no merit on behalf of their client to induce a bank to buy the client's municipal notes and bonds. *Id.* at 233–34. The bank purchased the notes and bonds, after which the pending lawsuit was successful and the bonds went into default. *Id.* at 234. We held that the bank stated a claim of negligent misrepresentation against the attorneys. *Id.* at 233. We reasoned that the attorneys prepared the opinion letters at the request of their client in order to induce the bank to enter into a mutually-beneficial business relationship. *Id.* at 233, 237. The letters were addressed to and for the benefit of the bank. *Id.* at 237. They were not issued in the context of an adversarial relationship. *Id.* Finally, the bank could have reasonably relied upon them. *Id.* at 239. *See also Zimmerman v. Dan Kamphausen Co.*, 971 P.2d 236 (Colo. App.1998) (holding that plaintiff stated a claim against an attorney for negligent misrepresentation where the attorney issued an opinion letter making assurances about its client in a real estate transaction).

It appears that a non-client plaintiff is most likely to state a claim of negligent misrepresentation against an attorney if it is based on facts similar to those presented in *Mehaffy*. However, we did not explicitly limit the claim of negligent misrepresentation against an attorney to factual circumstances where the attorney issues opinion letters to a third party at the request of her client. *See Mehaffy*, 892 P.2d at 235–37. Likewise, section 552 of the Restatement does not mandate that exact factual scenario to state a claim. As such, we do not hold that the facts present in *Mehaffy* must be met to satisfy the elements of negligent misrepresentation, as Allen argues. Moreover, we find it unnecessary to add additional elements to the claim of negligent misrepresentation because, in this case, the Steeles did not sufficiently plead all the elements mandated by the Restatement, as we now discuss.

## B. Business Transaction

 Next, we determine whether a misrepresentation made to a non-client about a potential civil lawsuit can satisfy the element "for the guidance of others in their business transactions." Regarding the meaning of a "business transaction," the Steeles argue that a "transfer of legal rights" is sufficient to meet the definition of a "business transaction." In other words, the Steeles argue that their negligence suit against the other driver is a business transaction and that Allen misinformed them while advising them in this matter. Alternatively, the Steeles assert that this court has never held that the plaintiff must use the false information in a business transaction. We review each argument in turn.

 First, the requirement that the misrepresentation was made "for the guidance of others in their business transactions" is an essential element of the tort of negligent misrepresentation. This element is separate and in addition to the element that the defendant attorney made the misrepresentation "in the course of his business, profession or employment." The "guidance of others in their business transactions" element means that the defendant attorney provided information to guide others, meaning, to guide the recipient of the information, in his or her business transactions. The recipient of the information could fall into two classes of people. First, the recipient could be a third party, to whom the attorney provides guidance at the request of his or her client. Second, in a situation such as the case at hand, the recipient could be a non-client, to whom the attorney provides information directly.

Second, we determine whether a potential lawsuit against another party can satisfy the element of a "business transaction." We look to the comments to section 552 of the Restatement. The comments discuss liability in terms of "commercial transactions" and state that "[b]y limiting the liability for negligence of a supplier of information to be used in commercial transactions ... the law promotes the important social policy of encouraging the flow of commercial information upon which the operation of the economy rests." Restatement (Second) of Torts § 552 cmt. a.

Common usage supports the Restatement's explanation that a business transac-

tion is a commercial transaction. *Black's Law Dictionary* defines "business" as a "commercial enterprise carried on for profit; a particular occupation or employment habitually engaged in for livelihood or gain." *Black's Law Dictionary* 226 (9th ed. 2009). A "business transaction" is defined as an "action that affects the actor's financial or economic interests, including the making of a contract." *Id.* at 227.

Next, Colorado cases demonstrate that the tort of negligent misrepresentation is intended to provide a remedy for, and is in fact limited to, "*money losses* due to misrepresentation in a *business transaction.*" *W. Cities Broad., Inc. v. Schueller,* 849 P.2d 44, 49 (Colo.1993) (emphasis added). In many Colorado cases in which the plaintiff stated a claim of negligent misrepresentation, the aggrieved plaintiff entered into a business or commercial transaction, or was induced to enter into the transaction, based on the defendant's misrepresentations. *See, e.g., Keller v. A.O. Smith Harvestore Prods., Inc.,* 819 P.2d 69 (Colo.1991) (silo manufacturer made misrepresentations to prospective buyers); *Platt v. Aspenwood Condo. Ass'n Inc.,* 214 P.3d 1060 (Colo.App.2009) (condominium association made misrepresentations to purchasers about its authorization to sell unit); *Wolther v. Schaarschmidt,* 738 P.2d 25 (Colo. App.1986) (engineer supplied false information to a prospective home buyer); *First Nat'l Bank in Lamar v. Collins,* 44 Colo. App. 228, 616 P.2d 154 (1980) (auto company made misrepresentations when assisting plaintiff in the purchase of an associate store).

Other states that define negligent misrepresentation according to section 552 have limited the cause of action strictly to cases involving business transactions, which they define synonymously with "commercial transactions." *See, e.g., G.A.W., III v. D.M.W,* 596 N.W.2d 284, 290 (Minn.Ct.App. 1999) (stating that negligent misrepresentation has been "recognized [only] in the context of a business or commercial transaction" and did not apply to husband's suit alleging former wife misrepresented paternity); *Robinson v. Omer,* 952 S.W.2d 423, 427–28 (Tenn.1997) (holding that negligent misrepre-

sentation did not apply where attorney gave advice for personal, not business, matters). *Contra Sain v. Cedar Rapids Cmty. Sch. Dist.,* 626 N.W.2d 115, 126 (Iowa 2001) (holding that negligent misrepresentation is not restricted to business matters, but "situations where the information supplied harmed the plaintiff in its relations with third parties").

Analyzing the meaning of a "business transaction" in a different context, the Colorado Rules of Professional Conduct prevent an attorney from entering "into a *business transaction* with a client." Colo. RPC 1.8(a) (emphasis added). The comments state that there is a "possibility of overreaching when the lawyer participates in a *business, property or financial transaction* with a client." *Id.* cmt. 1 (emphasis added). This rule is not intended to prevent an attorney from assisting a client with a potential lawsuit. If a "business transaction" was viewed so broadly as to encompass a lawsuit against another party, then attorneys could not assist their clients in lawsuits. This would render meaningless the prohibition in Colo. RPC 1.8 against attorneys entering into business transactions with their clients.

Therefore, a "business transaction" in the context of negligent misrepresentation means exactly what common understanding of the term implies: to state a claim of negligent misrepresentation, the misrepresentation must be given for the plaintiff's business or commercial purposes. Although a negligence lawsuit against another party has the potential to affect indirectly a non-client's financial or economic interests, a civil lawsuit does not involve a business or commercial relationship or transaction.

Hence, we hold as a matter of law that an initial consultation to discuss a potential civil lawsuit is not sufficient to meet the element "guidance of others in their business transactions."

### C. Restatement Third

We next address whether section 15(1)(c) of the Restatement (Third) of The Law Governing Lawyers, which only addresses the basis of liability for legal mal-

practice, may also provide the basis of liability for negligent misrepresentation. We do so because the court of appeals relied on it to find an attorney's duty of care to prospective clients, where no attorney-client relationship exists. Section 15(1)(c) imposes liability for malpractice in the absence of an attorney-client relationship, which contravenes Colorado law. Hence, we hold that it may not be used to support a claim of negligent misrepresentation.

Section 15 of the Restatement (Third) of The Law Governing Lawyers requires attorneys to use reasonable care when they provide legal services to prospective clients. Section 15 states in relevant part:

> (1) When a person discusses with a lawyer the possibility of their forming a client-lawyer relationship for a matter and no such relationship ensues, the lawyer must
> . . .
> (c) use reasonable care to the extent the lawyer provides the person legal services.

Section 15(1)(c) creates a standard of care in which attorneys may face civil liability for legal malpractice if they negligently provide legal services to prospective clients. *Id.* § 48 (Professional Negligence); § 51(1) (Duty of Care to Certain Nonclients). Negligent misrepresentation is addressed in a separate section of the Third Restatement. *Id.* § 51(2). Therefore, section 15(1)(c) is not a negligent misrepresentation standard of care. Rather, it addresses legal malpractice, which, as we have pointed out, is not at issue in this appeal.

▮▮▮ In addition to the fact that section 15(1)(c) does not address negligent misrepresentation, it blurs the distinction between a prospective client and a client because it subjects attorneys to the same civil liability and ethical responsibilities, irrespective of whether a person is a client or a prospective client. The distinction between a client and a prospective client is fundamental to Colorado law. In Colorado,

attorneys do not owe a duty of reasonable care to non-clients—either for legal malpractice or under the ethical rules. *Mehaffy*, 892 P.2d at 240; Colo. RPC 1.18. A plaintiff must establish the existence of an attorney-client relationship to state a claim of legal malpractice.[7] *Mehaffy*, 892 P.2d at 239. Attorneys owe a host of ethical obligations to clients which they do not owe to prospective clients. *See, e.g.*, Colo. RPC 1.1 (competence); 1.3 (diligence); 1.4 (communication). Section 15(1)(c) of the Restatement blurs the lines which are distinct in our jurisprudence to impose liability for legal malpractice broader than our precedent allows. Hence, it is inappropriate to rely on this subsection of the Restatement to define the tort of negligent misrepresentation.

If we were to hold that the tort of negligent misrepresentation may be based on an attorney's duty of reasonable care to prospective clients, then this would diminish the requirement that a plaintiff must establish an attorney-client relationship in order to state a claim of malpractice. In other words, prospective clients could make legal-malpractice-like claims under the guise of negligent misrepresentation, to circumvent the requirement to prove an attorney-client relationship, a necessary element of the tort of legal malpractice. Hence, we hold that a claim of negligent misrepresentation may not be founded upon the requirement in section 15(1)(c) of the Third Restatement that attorneys owe a duty of reasonable care to prospective clients.

### V. Application

Applying the principles we have discussed to this case, we hold that the Steeles did not allege sufficient facts in their complaint to state a claim of negligent misrepresentation. If we assume, as did the court of appeals, that the Steeles met with Allen in her office to discuss retaining her in their civil suit, then this is insufficient as a matter of law to

---

**7.** An attorney-client relationship may be demonstrated in the absence of contractual formalities. An attorney-client relationship may be "inferred from the conduct of the parties," such as when "the client seeks and receives the advice of the lawyer on the legal consequences of the client's

past or completed actions." *People v. Bennett*, 810 P.2d 661, 664 (Colo.1991) (holding that an attorney-client relationship existed where the attorney had previously performed miscellaneous legal services and the client regarded him as the family lawyer).

prove that she made the misrepresentation for their guidance in a business or commercial transaction. While this fact might be sufficient to satisfy the element that Allen gave the advice in the course of her "business, profession or employment," this alleged fact does not suffice to satisfy the distinct element that Allen gave the advice "for the guidance of others in their business transactions." Because the Steeles did not sufficiently plead the "business transactions" element as a matter of law, we do not address whether their complaint satisfied the other elements of negligent misrepresentation.

If the Steeles had an attorney-client relationship with Allen, then their allegation that she provided incorrect information about a statute of limitations would constitute a typical claim of malpractice. We are unwilling to expand the claim of negligent misrepresentation in this case in order to circumvent the element of the tort of legal malpractice, which requires the formation of an attorney-client relationship. Hence, we hold that the court of appeals erred by relying upon section 15(1)(c), which defines a legal malpractice standard, to form the basis of a negligent misrepresentation claim under circumstances where negligent misrepresentation was insufficiently pleaded.

### VI. Conclusion

For the reasons stated above, we reverse the court of appeals' decision. We remand this case to the court of appeals to be returned to the trial court for proceedings consistent with this opinion.

Justice EID concurs.

Justice EID, concurring.

I agree with the majority that the Steeles failed to state a claim for negligent misrepresentation. Maj. op. at 484. I also agree with the majority that section 15(1)(c) of the Third Restatement of The Law Governing Lawyers addresses the scope of a claim for legal malpractice, and therefore cannot be used to expand the tort of negligent misrepresentation as it has been recognized in Colorado. *Id.* at 485. Significantly, because the Steeles did not raise on appeal the issue of whether

they could state a legal malpractice claim, the issue is not now before us. *Id.* at 481. I therefore understand the majority's opinion as taking no position on the scope of section 15(1)(c) and its application to legal malpractice actions in Colorado. Accordingly, I join the opinion of the majority.