23CA2149 Natures Gift v Jones 12-05-2024

COLORADO COURT OF APPEALS

Court of Appeals No. 23CA2149
Pueblo County District Court No. 23CV30116
Honorable Gregory J. Styduhar, Judge

Nature's Gift Shop, LLC,

Plaintiff-Appellant,

v.

Keenan Jones, Esq. and Adam Foster, LLC, d/b/a Foster & Jones,

Defendants-Appellees.

JUDGMENT AFFIRMED

Division VII
Opinion by JUDGE TOW
Pawar and Schutz, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced December 5, 2024

The Viorst Law Offices, P.C., Anthony Viorst, Denver, Colorado, for Plaintiff-Appellant

SGR, LLC, Tiffaney A. Norton, Denver, Colorado, for Defendants-Appellees

¶ 1     Plaintiff, Nature's Gift Shop, LLC (NGS), appeals the district court's order granting summary judgment in favor of defendants, Keenan Jones and Adam Foster, d/b/a Foster & Jones.[1]  We affirm.

## I.    Background

¶ 2     NGS was a licensed marijuana cultivator owned and operated by Daniel and Susan Irey (the Ireys) in Pueblo, Colorado. Clearwater Consulting, LLC (Clearwater), a marijuana licensee, and NGS entered into a one-year contract (the cultivation-operations agreement) under which Clearwater would harvest, process, and store marijuana grown by NGS.  Jones, who represented Clearwater throughout this contractual relationship, drafted the terms of the cultivation-operations agreement.

¶ 3     Several years earlier, Jones had represented NGS in unrelated matters pertaining to its marijuana business.  In light of this previous relationship, Jones requested that NGS sign a conflict waiver acknowledging that he was not representing NGS in this new transaction.  After hiring independent counsel to review the

---

[1] Because all actions relevant to the defendants were undertaken by Jones individually, and because Foster's potential liability was purely derivative, we will refer solely to Jones.

proposed cultivation-operations agreement, NGS signed the agreement and the conflict waiver.

¶ 4    NGS and Clearwater discussed Clearwater's need to store harvested marijuana. Jones informed NGS that Clearwater intended to place a freestanding freezer-trailer on NGS's property to resolve the storage issue. Concerned about the legality of this practice, NGS contacted Tawnya Stringer, the Licensing Manager for the Pueblo County Planning Department. On August 10, 2021, Stringer informed NGS that a freestanding freezer-trailer was prohibited absent the filing and approval of a modification of premises application (MOP). The following week, NGS's property was inspected to ensure that no freezer-trailer was on the premises; at this time, the inspector reiterated to the Ireys that a freezer-trailer was not permitted without an approved MOP.

¶ 5    A few days after the inspection, Jones engaged directly with Pueblo County employees to further inquire about maintaining a freezer-trailer on NGS's premises. After a call with Pueblo's Senior County Attorney, Peter Blood, Jones emailed NGS on August 22, 2021, stating, "We are working with him on the logistics of the freezer trailer, but it's looking like it will not be a problem." NGS

2

responded with a request that Jones let them know "when [he] find[s] out if the semi freezer trailer outside will be allowed." Two weeks later, Jones forwarded NGS an email from Pueblo's Assistant County Attorney, Sarah Long. This email explained that "any freezer trailers that are there for longer than 30 days could not be considered temporary," and that one would have to be removed "unless [NGS went] through the process to update their site plan and get a modification of premises."

¶ 6 Despite the unequivocal directions relayed in Long's email, Clearwater arranged for a freestanding freezer-trailer to be delivered to NGS's property, where it remained for approximately eight months. A county inspection occurred while the freezer-trailer was on the premises. In April 2022, Pueblo County informed NGS that there was a pending enforcement action against it related to the freezer-trailer. After a hearing, the Liquor and Marijuana Hearing Board fined NGS $50,000 and suspended its marijuana cultivation license for six months. NGS ultimately surrendered its license and is no longer in business.

¶ 7 NGS filed suit against Jones requesting relief under two legal theories. The first claim asserted that Jones owed and breached a

3

fiduciary duty to NGS.  The second claim asserted that Jones negligently misrepresented that the freezer-trailer would not be a problem after his call with Blood.  Jones filed a motion to dismiss these claims, which the district court converted into a motion for summary judgment.  NGS responded, attaching a variety of documents and affidavits.  The district court granted the motion for summary judgment in favor of Jones on both claims.

¶ 8    This appeal followed.

## II.    Standard of Review and Applicable Law

¶ 9    We review de novo orders granting summary judgment. *S. Cross Ranches, LLC v. JBC Agric. Mgmt., LLC*, 2019 COA 58, ¶ 11. Summary judgment is appropriate when no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. *Id.* at ¶ 12.

¶ 10    In reviewing a motion for summary judgment, the court must afford the nonmoving party all favorable inferences that may be drawn from the undisputed facts. *Churchey v. Adolph Coors Co.*, 759 P.2d 1336, 1340 (Colo. 1988).  Similarly, all doubts as to the existence of genuine issues of material fact are resolved in favor of

the nonmoving party. *Travelers Ins. Co. v. Savio*, 706 P.2d 1258, 1276 (Colo. 1985).

¶ 11    The party moving for summary judgment bears the initial burden of establishing the absence of a disputed material fact. *Cont'l Air Lines, Inc. v. Keenan*, 731 P.2d 708, 712 (Colo. 1987). Where the issue is not one on which the moving party would bear the ultimate burden of persuasion at trial, the moving party's initial burden is satisfied by a showing "that there is an absence of evidence in the record to support the nonmoving party's case." *Id.* Once the moving party makes such a showing, "the burden shifts to the nonmoving party to establish that there is a triable issue of fact." *Id.* at 713. To do so, the nonmoving party cannot rely simply on the allegations in the pleadings or arguments of counsel. *Snook v. Joyce Homes, Inc.*, 215 P.3d 1210, 1218 (Colo. App. 2009).

### III.    Fiduciary Duty

¶ 12    NGS contends that the district court erred by granting summary judgment on its fiduciary duty claim. We disagree.

### A.    Applicable Law

¶ 13    To recover on a claim for breach of fiduciary duty, a plaintiff must prove that 1) the defendant was acting as a fiduciary of the

5

plaintiff; 2) the defendant breached a fiduciary duty to the plaintiff; 3) the plaintiff incurred damages; and 4) the defendant's breach of fiduciary duty was a cause of the plaintiff's damages. *Graphic Directions, Inc. v. Bush*, 862 P.2d 1020, 1022 (Colo. App. 1993).

## B. Analysis

¶ 14    NGS argues that Jones willingly entered into a fiduciary relationship with it when he took the lead in communicating with Pueblo County employees about the freezer-trailer. As evidence of a fiduciary relationship, NGS points to Jones's superior ability to obtain information from the Pueblo County employees, his implying to the same employees that he represented NGS, and his opportunity to influence NGS based on their prior business dealings.

¶ 15    NGS is correct that "[a] fiduciary relationship may exist . . . due to the superiority and influence that accompanies a repose of trust, confidence, and reliance." *Mintz v. Accident & Inj. Med. Specialists, PC*, 284 P.3d 62, 68 (Colo. App. 2010), *aff'd*, 2012 CO 50. But an unequal relationship does not automatically create a fiduciary duty. *Id.* Rather, "the superior party must assume a duty to act with utmost good faith and solely or primarily for the benefit

6

of the dependent party." *Bohrer v. DeHart*, 943 P.2d 1220, 1229 (Colo. App. 1996).

¶ 16    In defending against summary judgment, NGS presented no evidence that would suggest that Jones assumed a duty to act primarily in its best interest.  NGS argues this case is analogous to *Moses v. Diocese of Colorado*, 863 P.2d 310, 323 (Colo. 1993), wherein the court found that the superior party assumed a duty to act in the best interest of the dependent party.  In *Moses*, the superior party stated that he was assuming "personal responsibility for the resolution of the matter" and asked to speak to the dependent party to resolve the problem.  *Id.*  Here, in contrast, NGS concedes that at no time did it believe Jones was acting as its attorney.  And they present no evidence that Jones ever assured NGS or the Ireys that he would take care of their interests.

¶ 17    NGS instead relies on Jones's actions directed toward others.  NGS points to the fact that Jones indicated to Pueblo County employees that he was representing NGS and its interests as evidence of his assumption of duty.  But this in no way suggests that Jones assumed a duty to act *primarily* in NGS's best interest.  Indeed, Jones's efforts to convince the city to allow the on-site

freezer-trailer was at least as much in the interest of Clearwater as it was in the interest of NGS. In any event, because NGS admits it was not Jones's client, Jones's representations to city employees had no impact on *NGS's* perception of their relationship. *Contra id.* at 322 (finding the superior party assumed a duty to act when he "led [the dependent party] to believe he was acting in her interest").

¶ 18 NGS next argues that a fiduciary relationship existed because Jones had a "superior ability to obtain information" from the Pueblo County employees. But as noted, superiority alone is insufficient to create a fiduciary relationship unless the superior party assumes a duty to act in the best interest of the other party. *Mintz,* 284 P.3d at 68. Moreover, NGS presented no evidence to support its allegation that Jones had a "superior ability" to communicate with the Pueblo County employees, particularly in light of the fact that NGS also directly communicated with Stringer regarding the legality of the freezer-trailer.

¶ 19 Finally, NGS argues that it had a confidential relationship with Jones that in turn created a fiduciary relationship. "A confidential relationship may arise if a plaintiff shows that he or she reposed a special trust or confidence in the defendant, that the reposition was

justified, and that the defendant either invited or ostensibly accepted that trust." *Steiger v. Burroughs*, 878 P.2d 131, 134 (Colo. App. 1994). NGS argues that summary judgment was improper because Dan Irey "justifiably reposed confidence" in Jones based on their previous attorney-client relationship. But NGS presented no evidence that Jones invited or accepted that trust. NGS concedes that Jones was not acting as its attorney. Dan Irey's unilateral placement of trust in Jones is insufficient to create a confidential relationship.

¶ 20     In sum, NGS presented no facts to support any of its theories for why Jones owed it a fiduciary duty. Therefore, the district court did not err by granting summary judgment on this claim.[2]

---

[2] NGS contends, for the first time in its opening brief, that because Clearwater was NGS's agent, Jones was acting as a sub-agent. Because this argument was not first presented to or decided by the district court, it is not properly preserved, and thus not properly before us. *See Brown v. Am. Standard Ins. Co. of Wis.*, 2019 COA 11, ¶ 21 ("It is axiomatic that in civil cases, issues not raised in or decided by the trial court generally will not be addressed for the first time on appeal.").

## IV. Negligent Misrepresentation

¶ 21 NGS also contends that the district court erred by granting summary judgment on its claim for negligent misrepresentation. Again, we disagree.

### A. Applicable Law

¶ 22 An attorney may be liable to a non-client for negligent misrepresentation. *Allen v. Steele*, 252 P.3d 476, 482 (Colo. 2011). Success on a negligent misrepresentation claim requires the attorney to have made a misrepresentation of a material fact, without reasonable care, for the purpose of guiding the non-client in the business transaction and knowing this representation would be relied on by the injured party. *Id.* The non-client must have justifiably relied on this misrepresentation to their detriment. *Id.*

### B. Analysis

¶ 23 NGS alleges Jones misrepresented a material fact when he stated that he "had a very productive call with Peter Blood," and that he was "working with [Blood] on the logistics of the freezer trailer, but it's looking like it will not be a problem." Even if we assume this was a misrepresentation, NGS cannot show that any reliance on this statement was justified.

¶ 24     First, the statement was equivocal.  Jones did not say the freezer-trailer would *not* be a problem, only that it was *looking like* things could be worked out.  NGS clearly understood this, as their response asked Jones to let the company know *if* the freezer-trailer "will be allowed."

¶ 25     In any event, a party has no right to rely on a misrepresentation where the relevant information was "equally available to both parties and would have led to discovery of the true facts."  *Balkind v. Telluride Mountain Title Co.*, 8 P.3d 581, 587 (Colo. App. 2000).  After informing NGS about his conversation with Blood, Jones forwarded an email to NGS from Long, which stated:

> If the freezer trailers are being used for storage they would be considered a part of the operation and an accessory use, which is prohibited unless they have gone through the process to update their site plan and get a modification of premises.  If the freezer trailers are being used for shipping then that wouldn't be a violation under the code, however any freezer trailers that are there for longer than 30 days could not be considered temporary.

¶ 26     Long's email unequivocally states that the use of a freezer-trailer for the storage of marijuana for longer than thirty days would not be allowed without a MOP.  This information was

11

made equally available to NGS when Jones forwarded the email. NGS had no right to rely on Jones's characterization of his earlier call with Blood when it later learned of explicit information explaining the law and what was permitted. *See id.* (affirming district court's grant of summary judgment because plaintiff had no right to rely on a misrepresentation that a tract of land was no longer reserved for public use when they were informed of the town's rule prohibiting construction on the same land prior to sale).

¶ 27    NGS argues that the district court failed to consider the Ireys' sophistication level when determining whether the reliance was justified. "In a negligent misrepresentation claim, a . . . party's sophistication is relevant to determining whether a reasonable person in that party's position would have diligently investigated the transaction's subject matter." *Sheffield Servs. Co. v. Trowbridge*, 211 P.3d 714, 726 (Colo. App. 2009), *overruled on other grounds by Weinstein v. Colborne Foodbotics, LLC*, 2013 CO 33. Put another way, whether reliance is justified depends on if another person of similar intelligence, education, or experience would have relied on the representation. *M.D.C./Wood, Inc. v. Mortimer*, 866 P.2d 1380, 1383 (Colo. 1994). "Unsupportable subjective reliance

is inadequate." *Am. Safety Equip. Corp. v. Winkler*, 640 P.2d 216, 223 (Colo. 1982).

¶ 28 NGS contends that the Ireys' lack of experience as business owners made it reasonable for them to believe that "Jones would affirmatively notify [NGS] that the freezer-trailer had been prohibited by Peter Blood." The Ireys' lack of experience could have influenced their reliance on Jones's initial statement, and absent any additional guidance, may well have been sufficient to overcome the motion for summary judgment. But, upon receiving Long's email, NGS was unequivocally informed of Pueblo County's ordinances which explicitly barred the use of the freezer-trailer for storage. That, in combination with the fact that the email reflects that Blood also received a copy of Long's email, would have prompted a reasonable person to inquire further with Jones or Long. NGS's continued reliance on the outdated information regarding the discussion with Blood was entirely unsupportable and subjective. The Ireys' level of sophistication, therefore, does not raise a genuine issue of material fact regarding the justifiability of that reliance.

¶ 29    The unjustifiable nature of any reliance by NGS on Jones's description of his conversation with Blood is further established by the fact that Long's email was not the first time NGS was informed that the freezer-trailer could not be used for on-site storage of marijuana.  As noted, even prior to Jones's discussion with Blood, Stringer and a Pueblo County inspector directly informed NGS that the law forbade the use of a freezer-trailer for the proposed purpose.  NGS had no right to rely on Jones's misrepresentation when its own reasonable investigation into the same problem revealed that the freezer-trailer was not permitted.  *See Trowbridge*, 211 P.3d at 726 (finding reliance was unreasonable as a matter of law where a physical inspection of land and inquiry with the city would have revealed the necessary facts).

¶ 30    Because NGS failed to demonstrate the existence of a material factual dispute regarding whether it justifiably relied on Jones's representation, the district court did not err by granting summary judgment on its negligent misrepresentation claim.

## V.    Disposition

¶ 31    The judgment is affirmed.

JUDGE PAWAR and JUDGE SCHUTZ concur.