FILED
05/29/2026
Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
September 17, 2025 Session

## JULIE C. BARTHOLOMEW v. DOUGLAS K. SOUTHARD ET AL.

Appeal from the Chancery Court for Shelby County
No. CH-14-0586-3   JoeDae L. Jenkins, Chancellor

————————————————————————

No. W2024-01494-COA-R3-CV

————————————————————————

The trial court determined Defendants/Appellants were liable for damages arising from negligent misrepresentation and breach of contract.  We reverse.

**Tenn. R. App. 3 Appeal as of Right; Judgment of the Chancery Court Reversed and Remanded**

VALERIE L. SMITH, J., delivered the opinion of the court, in which KENNY ARMSTRONG and CARMA DENNIS MCGEE, JJ., joined.

Jef Feibelman, Jennifer Shorb Hagerman, and Sarah E. Stuart, Memphis, Tennessee, for the appellants, Douglas K. Southard, Southard Financial, and Southard Financial, LLC.

Robert L. Moore, Memphis, Tennessee, for the appellee, Julie C. Bartholomew.

# MEMORANDUM OPINION[1]

## I. BACKGROUND AND PROCEDURAL HISTORY

This dispute concerns a calculation error made by Defendants/Appellants Douglas K. Southard, Southard Financial, and Southard Financial, LLC (together, "Mr. Southard") and incorporated into a modified fee agreement between Plaintiff/Appellant Julie C. Bartholomew, a licensed attorney, and her former client, Donnie Sprinkle. The relevant background facts are largely undisputed.

In October 1996, Mr. Sprinkle retained Ms. Bartholomew to represent him in a wrongful death action after his wife was killed in an automobile accident. Ms. Bartholomew and Mr. Sprinkle agreed on a one-third contingency fee. The defendant admitted liability and, in April 1997, the action was resolved by mediation. Mr. Sprinkle recovered damages to be paid by a structured annuity settlement that had a present value of $2,250,000. The settlement included an immediate payment of $750,000; eight lump-sum payments beginning in January 2000 payable every five years through January 2035; and monthly payments for the longer of thirty years or Mr. Sprinkle's lifetime. Under the settlement, Mr. Sprinkle expected to receive a payout in excess of six-million dollars over 30 years – to be completed when Mr. Sprinkle reached age 65. Based on the present value of the payout ($2,250,000), Ms. Bartholomew's attorney's fees totaled $750,000, which were to be satisfied from the $750,000 front-end payment made to Mr. Sprinkle. Mr. Sprinkle subsequently objected to the immediate payment of Ms. Bartholomew's fee, and, in June 1999, Ms. Bartholemew and Mr. Sprinkle entered into the assignment agreement at the center of the current lawsuit. Under the 1999 agreement ("the Assignment Agreement"), Mr. Sprinkle agreed to pay Ms. Bartholomew $250,000 from the up-front payment and to assign portions of the lumpsum and monthly amounts received under the structured settlement to Ms. Bartholomew on an annual basis.

The amount payable to Ms. Bartholomew under the Assignment Agreement totaled $2,114,970.67 – or one-third of the amounts to be received by Mr. Sprinkle over the 30-year annuity period. Additionally, the proportional payments were structured/accelerated to account for the 14-year age difference between Ms.

---

[1] Rule 10 of the Rules of the Court of Appeals of Tennessee provides:

This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION", shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

Bartholomew and Mr. Sprinkle so that Ms. Bartholomew would receive all payments by the time she attained age 65. Thus, under the Assignment Agreement, Ms. Bartholomew expected to receive payments/fees totaling $2,114,970.67 over approximately 16 years. Ms. Bartholomew did not advise Mr. Sprinkle to seek independent legal advice before executing the Assignment Agreement.

In the meantime, in July 1998 Ms. Bartholomew contacted Mr. Southard to perform calculations for the annual amounts to be paid by Mr. Sprinkle under the Assignment Agreement. Ms. Bartholomew paid Southard $250 for his services; no written contract was executed. In turn, Ms. Bartholomew drafted the Assignment Agreement using Mr. Southard's calculations.

Mr. Sprinkle made annual payments under the Assignment Agreement totaling $600,752.72[2] through 2011 (inclusive of the $250,000 up-front payment) and then ceased payments. In January 2013, Ms. Bartholomew filed a complaint against Mr. Sprinkle seeking amounts due under the Assignment Agreement. In her complaint, Ms. Bartholomew asserted claims for 1) recovery of liquidated debt; 2) breach of contract; and 3) quantum meruit. Mr. Sprinkle answered in February 2013 and moved to dismiss Ms. Bartholomew's complaint. In his answer, Mr. Sprinkle asserted 1) that Ms. Bartholomew had failed to state a claim; 2) that her claims were barred by the doctrine of unclean hands; and 3) that the Assignment Agreement was void for lack of consideration.

Shortly thereafter, in February 2013, Mr. Sprinkle filed an ethics complaint against Ms. Bartholomew with the Tennessee Board of Professional Responsibility ("the TBPR"). In his complaint, Mr. Sprinkle asserted that, after he entered into the settlement agreement in the wrongful death action, in 1999 Ms. Bartholomew "prepared an assignment of benefits agreement that allowed her to collect her fees with a greater proportion and at an earlier date than I would receive my entire settlement." Mr. Sprinkle further asserted that Ms. Bartholomew "advised [him] that this was in my best interest." He stated,

> I signed the assignment agreement without being informed that I should consult an independent attorney on this matter. I trusted that Bartholomew was exercising her professional judgment for my benefit. Eventually, I realized that this assignment was not in my best interest, and I should have consulted with an independent attorney before signing the agreement. Additionally, I think the fee Bartholomew proposed in the assignment agreement is an extraordinary and unethical fee, and to date, Bartholomew

---

[2] From our review of the trial exhibits, it is unclear whether Ms. Bartholomew had received $600,752.72 or $700,752.72 through April 24, 2011. We observe that trial exhibit 21 recites total payments of $700,752.72 as of April 24, 2011. However, the parties' briefs cite Ms. Bartholomew's trial testimony that she was paid $600,752.72 prior to mediation with Mr. Sprinkle, which was concluded on April 30, 2013.

has failed to return my file material.

Mr. Sprinkle asserted that Ms. Bartholomew actions violated the Tennessee Code of Professional Conduct. He stated,

> Specifically, I feel that Bartholomew violated: (1) DR 2-106 by charging an illegal or clearly excessive fee, (2) DR 5-104 by entering into a business agreement with a client without the client's informed consent particularly because this agreement is unfair; and (3) DR 2-110 by failing to return my file materials.

In her response to Mr. Sprinkle's TBPR complaint, Ms. Bartholomew asserted that she "reasonably believed that Mr. Sprinkle's proposed deferral of payment of the fee was ethically acceptable." She further asserted:

> To insure that the acceleration was accomplished in a mathematically correct manner that accelerated my payments without affecting the proportionate sharing of the lump-sum payments or the overall proportionate sharing, I engaged and paid a professional economist. Mr. Doug Southard with Southard Financial, to prepare appropriate calculations for inclusion in the documentation of the modified fee arrangement. Mr. Southard was instructed to produce allocations of the lump-sums, so that I did not receive any greater portion or advantage than without the acceleration.

Ms. Bartholomew stated that Mr. Sprinkle chose the Assignment Agreement from the "three possible calculations for division of the lump-sum payments" produced by Mr. Southard. She further asserted that her "intent at all times was to carry out Mr. Sprinkle's desire to pay the fees incrementally in a manner that did not unfairly benefit me, nor detract from Mr. Sprinkle's expected receipt of 2/3's payment under the structured settlement." She contended that, in order "to prevent the very thing Mr. Sprinkle [was] apparently accusing [her] of" she "hired a professional economist to properly compute the accelerated lump-sum payments and to account for the acceleration in a manner that maintained the fairness of and same proportionate division of the fees as without the acceleration." Ms. Bartholomew further asserted that she "never advised Mr. Sprinkle" that the Assignment Agreement "was in [his] best interest." She submitted:

> One could assert that Mr. Sprinkle's "best interests" would have been served had he fulfilled his original contractual commitment to pay my fees on the front end, with Mr. Sprinkle receiving all of the future payments over the term of the structured settlement, but it was Mr. Sprinkle's decision to deviate from the original fee arrangement, which he believed was unfair.

- 4 -

Ms. Bartholomew denied that she misled Mr. Sprinkle regarding the provisions in the Assignment Agreement and contended that she "compromised [her] own best interests in receiving an immediate fee" in order to achieve Mr. Sprinkle's goal of deferring fees. She stated that she did not recall advising Mr. Sprinkle to procure independent legal counsel but "recall[ed] Mr. Sprinkle informing me that he was being counseled by an investment/financial professional." Ms. Bartholomew asserted that because she had engaged Mr. Southard to "make proper calculations" the division of payments could not be "characterize[d] . . . as unfair[.]" She asserted that the question of whether she advised Mr. Sprinkle to obtain independent counsel accordingly was "a moot issue." Ms. Bartholomew denied any violation of the Rules of Professional Conduct and asserted that the 1999 Assignment Agreement "was merely a modification of the original contract for fees, not a 'business' transaction[.]" She asserted that she and Mr. Sprinkle did not have "differing or conflicting interests . . . but separate interests that remained separate."

In April 2013, Ms. Bartholomew and Mr. Sprinkle agreed to mediate their fee dispute. Shortly before mediation, Mr. Sprinkle's legal counsel questioned calculations contained in the Assignment Agreement. Upon review of the calculations, Mr. Southard acknowledged that calculations for payments due in 2025 and 2020 had not been reduced to present value, which would have resulted in an overpayment to Ms. Bartholomew totaling more than $150,000. Ms. Bartholomew settled her action against Mr. Sprinkle for an additional $100,000 at mediation on April 30, 2013.[3]

In April 2014, Ms. Bartholomew filed a complaint for breach of contract and negligent misrepresentation against Mr. Southard in the Shelby County Chancery Court ("the trial court"). Following hearings in February, March, and September 2024, the trial court entered judgment in favor of Ms. Bartholomew on September 12, 2024. The trial court found Mr. Southard liable for damages under both claims, and Ms. Bartholomew elected to recover damages in tort. The trial court awarded Ms. Bartholomew damages in the amount of $1,220,722.45, including the present value amount of $1,020,758 and pre-judgment interest of ten percent (199,963.51). Mr. Southard filed a timely notice of appeal.

## II. STANDARD OF REVIEW

This is a non-jury case. Accordingly, we review the trial court's findings of fact *de novo* upon the record with a presumption of correctness unless the evidence

---

[3] In her appellate brief, Ms. Bartholomew references the April 2013 settlement agreement for the proposition that Mr. Sprinkle "elected to exercise his right to avoid the fee agreement containing the unreasonable fee resulting from [Mr. Southard's] calculation error, through a settlement in mediation." However, we observe that the settlement document is silent with respect to the calculation errors and, as noted, Mr. Sprinkle refused to comply with the agreement well before the errors were discovered.

preponderates otherwise. Tenn. R. App. P. 13(d); *Allstate Ins. Co. v. Tarrant*, 363 S.W.3d 508, 512 (Tenn. 2012). The evidence preponderates against the trial court's findings of fact when it supports another finding "with greater convincing effect." *Hardeman Cnty. v. McIntyre*, 420 S.W.3d 742, 749 (Tenn. Ct. App. 2013) (citation omitted). Therefore, the trial court's factual findings must contain sufficient underlying facts that clearly disclose the basis of the court's determinations. *Lovelace v. Coley*, 418 S.W.3d 1, 34 (Tenn. 2013) (citations omitted). Appellate review of a trial court's conclusions of law is *de novo* with no presumption of correctness. *Kelly v. Kelly*, 445 S.W.3d 685, 692 (Tenn. 2014).

## III. DISCUSION

In his brief, Mr. Southard raises 12 issues for our review. The initial determinative issue, however, is whether Ms. Bartholomew carried her burden to demonstrate that Mr. Southard's calculation errors proximately caused the damages she asserts.

We begin our discussion by observing that, although Ms. Bartholomew asserted a claim for breach of contract – the "breach" she complains of consists of professional negligence.[4] We also note that, in its September 2024 judgment, the trial court did not make findings of fact with respect to each element of Ms. Bartholomew's breach of contract and negligent misrepresentation claims. Rather, the trial court attached and incorporated its oral rulings from the March 6 and September 3 hearings to its final judgment. The trial court's judgment, as we construe it, is predicated on its determination that 1) Mr. Southard's error in his calculation of the 2015 and 2020 amounts due under the Assignment Agreement constituted negligence and breach of contract; 2) believing the Assignment Agreement was unenforceable, Ms. Bartholomew abandoned her claims against Mr. Sprinkle; and 3) Ms. Bartholomew suffered damages equal to the amount she would have received under the Assignment Agreement. Thus, we turn to whether Ms. Bartholomew carried her burden to demonstrate that her asserted damages were proximately caused by Mr. Southard's negligence.

In an action for negligent misrepresentation, the plaintiff carries the burden to demonstrate that: (1) the defendant supplied information to the plaintiff; (2) the information was false; (3) the defendant did not exercise reasonable care in obtaining or communicating the information; and (4) the plaintiffs justifiably relied on the

---

[4] It is well settled that in order to succeed on a claim for breach of contract, a plaintiff must demonstrate "(1) the existence of an enforceable contract, (2) nonperformance amounting to a breach of the contract, and (3) damages caused by the breach of the contract." *C & W Asset Acquisition, LLC v. Oggs*, 230 S.W.3d 671, 676–77 (Tenn. Ct. App. 2007) (quoting *ARC LifeMed, Inc., v. AMC–Tennessee, Inc.,* 183 S.W.3d 1, 26 (Tenn. Ct. App. 2005) (citing *Life Care Ctrs. of Am., Inc. v. Charles Town Assoc.'s Ltd. Partnership, LPIMC Inc.,* 79 F.3d 496, 514 (6th Cir.1996))).

information. *Stanfill v. Mountain*, 301 S.W.3d 179, 189 (Tenn. 2009). However, Tennessee has adopted the following definition of the claim of negligent misrepresentation against business professionals:

(1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, *supplies false information for the guidance of others in their business transactions,* is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

(2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered

(a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and

(b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

*Robinson v. Omer*, 952 S.W.2d 423, 427 (Tenn. 1997) (quoting *Restatement (Second) of Torts,* § 552 (1977) (emphasis added by *Robinson*)). "The requirement that the misrepresentation was made 'for the guidance of others in their business transactions' is an essential element of the tort of negligent misrepresentation." *Batten v. Cmty. Tr. & Banking Co.*, No. E2017-00279-COA-R3-CV, 2019 WL 4013719, at \*24 (Tenn. Ct. App. Aug. 26, 2019) (citing *Allen v. Steele*, 252 P.3d 476, 483 (Colo. 2011)).

The issue presented by this appeal is whether Ms. Bartholomew has carried her burden to demonstrate that the damages she asserts were caused by her justifiable reliance on the calculations supplied by Mr. Southard. It is undisputed that Mr. Southard's calculation errors pertaining to payments due in 2015 and 2020 did not cause Mr. Sprinkle to breach the Assignment Agreement. Rather, Ms. Bartholomew asserts that Mr. Southard's error caused her not to pursue her action against Mr. Sprinkle. Upon review of the record, we note that Ms. Bartholomew testified at trial that she "thought [her] goose was cooked" when she discovered the calculation errors. She testified: "I *thought* the assignment was not valid anymore, or it wasn't valid from the beginning, and I just didn't know it." (emphasis added) She further testified that she assumed her recovery would be limited to $750,000 if the Assignment Agreement was determined to be unenforceable. Ms. Bartholomew additionally submits that she was advised by her legal counsel, MeLisa Williams, that the Assignment Agreement was not enforceable. Thus, Ms. Bartholomew's argument, as we summarize it, is that, based on Ms. Williams'

opinion, she *believed* the calculation errors would render the Assignment Agreement unenforceable and accordingly settled for less than she otherwise might have in mediation with Mr. Sprinkle in 2013. Whether Mr. Southard is liable for any damages hinges on whether Ms. Williams was correct in her assessment and whether Ms. Bartholomew's reliance on her own *belief* equates to causation for her alleged injury.

We observe, as an initial matter, that Ms. Bartholomew's decision to mediate her action against Mr. Sprinkle predated the discovery of Mr. Southard's error. Thus, the calculation errors relevant to the 2015 and 2020 payments did not cause Mr. Sprinkle to breach his agreement with Ms. Bartholomew. Additionally, as Mr. Southard asserts, Ms. Bartholomew has not demonstrated that the errors rendered the agreement unenforceable in toto; that it could not be corrected, revised, or reformed; or that she made any attempt to postpone mediation to permit further consideration/adjudication of the question. Rather, she apparently relied on Ms. Williams' determination that the Assignment Agreement was not enforceable. Whether Ms. Williams was correct in that determination has not been resolved, and it does not appear from the record that Ms. Bartholomew made any attempt to reform the agreement. Moreover – and perhaps more significantly – Ms. Bartholomew has not demonstrated that the Assignment Agreement would have been enforceable as a reasonable fee agreement absent Mr. Southard's calculation error.

Upon review of the record, we make several additional observations. First, the 1999 Assignment Agreement replaced a standard contingency legal fee agreement and purported to compensate Ms. Bartholomew for the balance of legal fees owed ($500,000) for services rendered over six months in 1996-1997. The agreement does not account for a $6,6000 payment due to attorney Richard Kline, the Sprinkles' family attorney who was involved with the wrongful death case before Ms. Bartholomew became involved and referred Mr. Sprinkle to Ms. Bartholomew. It also does not account for a $15,179 subrogation claim asserted by Allstate Insurance Company, a claim that Ms. Bartholomew testified she was unaware of until informed of it by Mr. Klein after the settlement.

Second, when Mr. Sprinkle ceased payments in April 2011, he had paid Ms. Bartholomew more than $600,000, and Ms. Bartholomew settled her claim against Mr. Sprinkle for an additional $100,000 in April 2013.

Third, under the Assignment Agreement, Ms. Bartholomew's original $750,000 contingency fee grew to "fees" in excess of $2,000,000 payable over a significantly accelerated period of approximately 16 years.

Fourth, Ms. Bartholomew did not advise Mr. Sprinkle to seek independent counsel before executing the agreement. Further, Ms. Bartholomew implicitly acknowledged in her communications to the TBPR that she did not advise Mr. Sprinkle that the Assignment Agreement was not in his best interest.

Fifth, Ms. Bartholomew asserts that the TBPR determined that the Assignment Agreement was ethical because the board dismissed Mr. Sprinkle's ethics complaint against her. However, it appears from the expert testimony in the record that the complaint was dismissed as a matter of course after Ms. Bartholomew mediated and settled her action against Mr. Sprinkle. It does not appear that the TBPR's order dismissing Mr. Sprinkle's complaint was made an exhibit in the record. After Ms. Bartholomew and Mr. Sprinkle settled upon an agreeable fee, the complaint became moot. Additionally, even assuming such an agreement would have been permissible in this case, the reasonableness of the amount of an attorney's fee award ultimately is governed by Tennessee Supreme Court Rule 8, Rule of Professional Conduct 1.5(a). *Wright ex rel. Wright v. Wright*, 337 S.W.3d 166, 185 (Tenn. 2011). As noted above, that determination has not been made.

The calculations at issue are tangled, and we agree with Ms. Bartholomew's assessment (in correspondence with her financial expert) that the complexity of the Assignment Agreement, complete with its acceleration provisions, might make one's "head explode." Upon review of the record, however, we agree with Mr. Southard that Ms. Bartholomew has not carried her burden to demonstrate proximate cause as to the damages she asserts. Although she may have felt that her "goose was cooked" when the calculation errors in future payments were discovered, Ms. Bartholomew leap-frogged over her burden to demonstrate that, as a matter of law, 1) the agreement was rendered unenforceable in toto as a result of the two calculation errors in future payments, or 2) reformation of the agreement was not possible. Though testimony was presented as to her belief, the advice given by her own attorney, and expert testimony as to the ethics of the accelerated agreement, the record before us contains no finding by a court or testimony that the mistake rendered the agreement incapable of reformation. *See Silsbe v. Houston Levee Indus. Park, LLC*, 165 S.W.3d 260, 266 (Tenn. Ct. App. 2004) (…the purpose of the doctrine [of reformation] is to permit the writing to fully and accurately reflect the parties' agreement[.]") Cases involving professional negligence are often seen as "cases within cases." *Love v. Am. Fed'n of State, Cnty. & Mun. Emps. Loc. 1733*, 165 S.W.3d 623, 632 (Tenn. Ct. App. 2004). The second case within a case requires the plaintiff to prove that had the defendant not been negligent, the plaintiff "more likely than not" would have prevailed in the underlying action. *Id.*

Here, there is no proof or finding as to the "inside" case— there is only Ms. Bartholomew's belief. Ms. Bartholomew essentially argues that causation is satisfied because her belief is "a cause." We disagree that her "belief" satisfies her burden on the element of causation. Further, although we do not hold that a structured agreement for the payment of legal fees is never permissible, Ms. Bartholomew has not demonstrated that the Assignment Agreement in this case was an otherwise enforceable fee agreement under *Wright* or that she would have successfully recovered more than $1,000,000 in additional legal fees from Mr. Sprinkle.

## V. CONCLUSION

For the reasons stated herein, we reverse the judgment of the trial court. All remaining issues raised by the Appellant are pretermitted as unnecessary in light of this Opinion. Costs on appeal are taxed to the Appellee, Julie C. Bartholomew, for which execution may issue if necessary.

s/ Valerie L. Smith
VALERIE L. SMITH, JUDGE